**William FATURIK, Plaintiff,**

v.

**WOODMERE SECURITIES, INC.,
Richard Kahn and Bear Stearns
& Co., Defendants.**

**No. 77 Civ. 937 (LFM).**

United States District Court,
S. D. New York.

May 19, 1977.

for failure to state a claim upon which relief can be granted, Rule 12(b)(6), Fed.R. Civ.P. We deny the motion.

The gravamen of this action is that the defendants violated the securities laws by "churning" plaintiff's trading account, that is, excessively buying and selling for his account, in a manner disproportionate to the size, character and objectives of the account, for the purpose of generating brokerage commissions.

The complaint alleges that plaintiff transferred his securities trading account from another brokerage house to defendant, Woodmere Securities, Inc. ("Woodmere"), at the suggestion of defendant Richard Kahn, a registered representative employed by Woodmere. Plaintiff executed a power of attorney enabling Kahn and Woodmere to trade for his account, but plaintiff specifically instructed Kahn to use the power of attorney only in the event of a drastic market downturn and only during a two-week period in which plaintiff was to be out of the country. Furthermore, plaintiff claims, he explicitly named nine stocks which were not to be sold. Notwithstanding these instructions, defendants sold twenty-two of the twenty-five stocks in plaintiff's portfolio on the very day the account was opened, and they sold two more of his stocks two days later. Defendants made numerous sales and purchases for plaintiff's account in the ensuing weeks, as a result of which plaintiff suffered losses through commissions, through lost dividends on the stocks he had owned previously, and through declines in the prices of stocks purchased for his account.

During this period of active trading, defendant Bear Stearns was acting as Woodmere's clearing broker, effecting the actual transfers of funds and securities and maintaining the records relating to the numerous transactions in plaintiff's account. Confirmation slips and monthly statements were mailed to plaintiff by Bear Stearns, and Bear Stearns also directly communicated with plaintiff whenever additional margin funds were required.

Louis C. Pulvermacher, P. C. by Mark Grossman, New York City, for plaintiff.

Grandefeld & Goodman by Mortimer Goodman, New York City, for defendant.

MacMAHON, District Judge.

Defendant, Bear Stearns & Co. ("Bear Stearns"), moves to dismiss the complaint

Numerous cases have held that excessive trading by a broker exercising control over an account, disproportionate to the size, character and objectives of an account, for the purpose of generating commissions, constitutes actionable fraud within the meaning of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. See, e. g., *Carras v. Burns*, 516 F.2d 251 (4th Cir. 1975); *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168 (10th Cir. 1974); *Powers v. Francis I. DuPont & Co.*, 344 F.Supp. 429 (E.D.Pa.1972); *Moscarelli v. Stamm*, 288 F.Supp. 453 (E.D.N.Y. 1968); *Hecht v. Harris, Upham & Co.*, 283 F.Supp. 417 (N.D.Cal.1968), *aff'd and modified*, 430 F.2d 1202 (9th Cir. 1970).

It is clear, then, that the complaint states a sufficient cause of action against Woodmere and Kahn. None of the churning cases noted above, however, considered the existence of a claim for relief against a clearing broker, such as Bear Sterns, which had no part in initiating purchases or sales, but merely effectuated them at the behest of its customer, Woodmere. Certainly, one requirement for direct liability under § 10(b), namely, "control" over plaintiff's account, would be lacking as to Bear Stearns, since the complaint does not allege that Bear Stearns was empowered to act on plaintiff's behalf, as were Woodmere and Kahn. See, e. g., *Powers, supra*, 344 F.Supp. at 432. Furthermore, if Bear Stearns were performing mere clerical functions on orders placed by Woodmere, we would be hard pressed to find that Bear Stearns had the requisite "scienter," that is, "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976). Nevertheless, on the basis of the facts before us now, we cannot say that plaintiff has not stated a claim for relief against Bear Stearns on at least two other theories.

### Aider-Abettor Liability under § 10(b).

As our Court of Appeals recently recognized, "the knowing assistance of or participation in a fraudulent scheme gives rise to liability under § 10(b) as an aider or abettor." *Hirsch v. duPont*, 553 F.2d 750, at 759 (2d Cir. 1977), citing *Kerbs v. Fall River Indus., Inc.*, 502 F.2d 731 (10th Cir. 1974); see also *Hochfelder v. Midwest Stock Exchange*, 503 F.2d 364 (7th Cir.), *cert. denied*, 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974); *Brennan v. Midwestern United Life Ins. Co.*, 417 F.2d 147 (7th Cir. 1969), *cert. denied*, 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970). Whether the assistance to a fraudulent scheme is in the form of active participation or mere inaction from an "improper motive," the one clear requirement for establishing aider-abettor liability under § 10(b) is actual knowledge of the fraud. See *Hirsch, supra*, 553 F.2d at 759; *Hochfelder, supra*, 503 F.2d at 374.

Plaintiff does allege some facts indicating that Bear Stearns *may* have had knowledge; for instance, its offices are in the same building and on the same floor as Woodmere's offices, and the two firms apparently enjoy a continuing close working relationship. Plaintiff also alleges that Bear Stearns' knowledge of vigorous activity in plaintiff's account (by virtue of its executive and record-keeping function) put Bear Stearns on notice of possible churning, and that Bear Stearns' fiduciary responsibility to plaintiff required it to inquire further into the circumstances surrounding the trades. While we voice no opinion as to the ultimate sufficiency of these alleged facts, we simply cannot say at this juncture that plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### Violation of the "Know Your Customer Rule."

Plaintiff argues that Bear Stearns, a member of the New York Stock Exchange, is bound by Rule 405 of the Exchange, the so-called "Know Your Customer Rule" or "Due Diligence Rule." Rule 405 provides that members of the Exchange are required to:

"Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization."

The rule also provides that members must supervise diligently all accounts handled by the firm and specifically approve the opening of an account either prior to or promptly after the completion of a transaction. Rule 411 of the American Stock Exchange is to similar effect.

■ Although not every violation of Exchange rules is per se actionable, a violation of Rule 405 can, in some cases, create a private claim for relief. *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135 (7th Cir.), *cert. denied,* 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969); *Burns v. Bruns Nordeman & Co.,* 1972–73 Transfer Binder, CCH Fed.Sec.L.Rep. ¶ 93,674 (S.D.N.Y.1972).

The recent case of *United States Fidelity & Guar. Co. v. Royal Nat'l Bank,* 545 F.2d 1330 (2d Cir. 1976), does not alter our conclusion that plaintiff may prove facts entitling him to relief. The court, in *Fidelity,* discussed a situation very similar to the instant case. Royal National Bank had cashed for one of its well-known customers several treasury notes which were later determined to be stolen. Before this discovery, however, Royal had resold the notes to a brokerage house (Merrill Lynch) with whom Royal had had a longstanding commercial relationship. In considering whether Merrill Lynch had purchased the notes in good faith and, thus, would not be liable for conversion under New York UCC § 8–301(2), the court considered whether Merrill Lynch had complied with Rule 405. The court held that Merrill Lynch had no duty to look beyond its primary customer, *i. e.,* Royal, or to inquire as to "the bona fides of its customers' customers." *Id.* at 1335.

Applying the *Fiaelity* rationale to the present case, it might be argued that Bear Stearns' customer was Woodmere, and Bear Stearns had no duty under Rule 405 to inquire into plaintiff's situation in order to protect him against churning. On the face of it, this argument has superficial appeal, but we note that the court's holding in *Fidelity* was specifically conditioned on the absence of "irregularity or suspicious circumstances which would put the broker on notice of irregularity . . . ." The complaint here, however, suggests that there *were* irregularities or suspicious circumstances putting Bear Stearns on notice and indicating a possible violation of Rule 405.

We do not say here, of course, that clearing brokers are per se liable for fraudulent or manipulative schemes by trading brokers; nor do we say, however, that clearing brokers are per se insulated from liability simply because they execute and/or clear orders from another broker and not from the customer himself. Suffice it to say that, in appropriate cases, subject to proof of knowledge and assistance sufficient to establish aider or abettor liability under § 10(b), or proof of an actionable violation of Rule 405, clearing brokers may be liable for the manipulative or deceptive schemes of trading brokers. The allegations of this complaint are legally sufficient, and dismissal of the claims against Bear Stearns is, therefore, unwarranted. The ultimate determination of Bear Stearns' liability must await full development of the facts upon a plenary trial.

Accordingly, defendant Bear Stearns & Co.'s motion to dismiss the complaint is denied.

So ordered.