HALCYON SECURITIES, INC., Plaintiff,

v.

CHASE MANHATTAN BANK, N. A., Edgar W. Heisler and Stein Associates, Defendants.

No. 77 Civ. 1144.

United States District Court, S. D. New York.

Oct. 28, 1977.

Brecher, Moskowitz & Altman, New York City, for plaintiff.

Milbank, Tweed, Hadley & McCloy, New York City, for defendants The Chase Manhattan Bank, N. A. and Edgar W. Heisler.

LASKER, District Judge.

Halcyon Securities, Inc., claims that Chase Manhattan Bank and Edgar W. Heisler have committed various violations of the 1934 Securities Exchange Act. Chase moves to dismiss the complaint under Rule 12(b)(6) of the F.R.Civ.P. for failure to state a claim upon which relief can be granted. The motion is granted.

In August of 1975, Stein Associates ("Associates") opened a brokerage account with Halcyon Securities, a registered broker dealer, through which it traded securities. Commencing in October, 1975, Halcyon made three requests to Stein Associates for margin payments to conform with Regulation T of the Federal Reserve Board. Associates made the three payments of $9,500., $68,900., and $14,125.28, respectively, by drawing on its account with Chase although, according to the complaint, at the time each of these checks was honored, Stein Associates had insufficient funds in its account to cover the payments. In December, 1975, Halcyon requested a further margin payment of $77,333. Associates

drew and delivered two checks, for $55,966. and $21,367., on its account at Chase but placed a stop payment order on the checks, preventing their negotiation by Halcyon's clearing agent. Plaintiff claims that it suffered such severe losses as a result of this transaction that it was forced to cease operations. Halcyon accuses Chase and Edgar W. Heisler, the branch manager who handled these transactions, of having induced it to continue dealing with Associates by honoring the overdrafts and thus creating a false aura of solvency. Specifically, plaintiff claims that defendants have violated Regulations U and X of the Exchange Act, have conspired with and aided and abetted Associates in a fraudulent scheme in violation of Rule 10b–5, and are guilty of negligence. Since the allegations of Halcyon's complaint are inadequate to permit recovery on any of these grounds, the motion to dismiss is granted.[1]

## I.

*Regulation U*

■ Plaintiff claims that defendants have violated Regulation U, promulgated by the Board of Governors of the Federal Reserve Board pursuant to § 7(d) of the Exchange Act, which regulates loans by banks for the purchase of margin stock. Regulation U directs that: "no bank shall extend any credit secured directly or indirectly by any stock for the purpose of purchasing or carrying any margin stock in an amount exceeding the maximum loan value of the collateral . . . " 12 C.F.R. § 221.1(a) (1977). Chase and Heisler argue that this regulation is inapplicable to the transactions specified in the complaint since

payment of an overdraft is not an extension of credit and, even if it were, the payments were not secured by stock. We find it unnecessary to reach the question whether the payments constituted extensions of credit since plaintiff has failed to allege that the payments were directly or indirectly secured by stock as defined by the Regulation.

"Indirectly secured" is defined by Regulation U to apply to "any arrangement with the customer under which the customer's right or ability to sell, pledge, or otherwise dispose of stock owned by the customer is in any way restricted . . . " 12 C.F.R. § 221.3(a) (1977). Halcyon has not alleged that the payments made by Chase were directly secured by stock, nor that any "arrangement" existed which limited Associates' ability to dispose of the stock.[2] This claim is dismissed.

## II.

*Regulation X*

■ Halcyon also alleges a concurrent violation of Regulation X of the Exchange Act, which extends to borrowers the obligation of complying with the margin requirements. Regulation X is intended:

"to prevent the infusion of unregulated credit obtained both outside and within the United States into U.S. securities markets in circumvention of the provisions of the Board's margin regulations or by borrowers falsely certifying the purpose of a loan or otherwise wilfully and intentionally evading the provisions of those regulations." 12 C.F.R. § 224.1 (1977).

1. In response to defendants' motion to dismiss, Halcyon has submitted a memorandum of law, together with an affidavit of Halcyon's president, Paul J. Keeler, and testimony of Edgar W. Heisler taken from an arbitration proceeding between Halcyon and Associates. Had we relied upon this material we would have been required by Rule 12(b)(6) to treat this motion as a motion for summary judgment. We have not relied upon this material. However, we note that had we done so we would have been compelled to grant summary judgment to de-

fendants since the supplemental documents provide no support for plaintiff's legal claims.

2. Plaintiff's memorandum asserts that Halcyon "intends to prove that without doubt, Chase and Heisler were depending upon the securities for their collateral in extending purpose credit to Stein Associates." (Memorandum at 6) Even if Halcyon could prove such a dependence on Chase's part, this would not be evidence of an actionable agreement, since it would not amount to a binding restriction on Associates' right to dispose of its stock.

While Halcyon has not alleged in what particular respect defendants are guilty of violating Regulation X, it apparently relies on a theory of aider and abettor liability. (See Plaintiff's Memorandum at 7) The claim is insufficient on two grounds. First, Halcyon has not alleged that any of the margin requirements has been circumvented or evaded, a prerequisite to violation of Regulation X. Second, defendant's conduct does not fall within the definition provided by the Regulation, which states that "the term 'aids or abets' shall include, but not be limited to, counsels, commands, induces, or procures." 12 C.F.R. § 224.6(b) (1977) It is recognized that the regulation is not intended to be all-inclusive. Nevertheless, the phrase "not limited to" certainly cannot be construed to go beyond the generally accepted meaning of aiding and abetting as knowing involvement. See *Hirsch v. duPont,* 553 F.2d 750 at 759 (2d Cir., 1977). The actual language of the regulation strongly suggests that this interpretation is correct here since all the examples supplied refer to active encouragement. Halcyon has not alleged any such active involvement by the bank.[3] This claim is also dismissed.

### III.

*Rule 10b–5*

■ Halcyon claims that Chase and Heisler have violated Rule 10b–5 by aiding and abetting and by conspiring with Associates to defraud plaintiff. However, the complaint does not allege the necessary elements of either of these claims.

**3.** The testimony of Edgar Heisler reveals only that the bank honored one of the overdrafts because a mechanical error prevented it from returning the check. (Testimony at 312–13)

**4.** In *Abrahamson, supra,* at 91,282 n. 16, the Second Circuit defined the standards for aider and abettor liability in this way: "we believe that before Goodkin can be held liable as an aider and abettor, there must be a showing that Goodkin: (a) knew of the investment adviser-client relationship; (b) had knowledge of the fraud; and (c) acted in concert with the investment adviser. Cf. *Ernst & Ernst v. Hockfelder* [sic], 425 U.S. 185 [96 S.Ct. 1375, 47 L.Ed.2d 668] (1976)." In *Faturik, supra,* at 896, the District Court stated that "the one clear requirement for establishing aider-abettor liabili-

### A. Aiding and Abetting

To establish aider and abettor liability under Rule 10b–5, Halcyon must prove that the defendants were guilty of "knowing assistance of or participation in a fraudulent scheme." *Hirsch v. duPont, supra,* at 759. *Faturik v. Woodmere Securities, Inc.,* 431 F. Supp. 894, 896 (S.D.N.Y. 1977). Halcyon does not allege that the defendants knew that a fraudulent scheme existed, but merely that defendants "knew or should have known" that the checks which it honored were issued in connection with the purchase of securities (Complaint at ¶ 14) and, similarly, that defendants "knew or should have known" that Associates had insufficient funds to cover the payments. (Complaint at ¶¶ 13, 31) Even if Halcyon could prove these facts, such evidence would not establish the degree of knowledge held necessary for aider and abettor liability in *Hirsch v. duPont, supra,* at 759, in which the Second Circuit stated that "knowledge of the fraud, and not merely the undisclosed material facts, is indispensable." *Abrahamson v. Fleschner,* (1976–77 Transfer Binder) Fed.Sec.L.Rep. (CCH) ¶ 95,889 at 91,282 n. 16; (2d Cir. Feb. 25, 1977) *Faturik v. Woodmere Securities, Inc., supra,* at 896.[4] While Chase, through its branch manager, Heisler, may have become acquainted with disconnected facts concerning Associates' financial status, the complaint does not allege that it had knowledge that a fraud was being perpetrated,[5] or that Chase occupied a fiduciary relationship

ty under § 10(b) is actual knowledge of the fraud."

**5.** The testimony of Edgar Heisler which Halcyon has submitted does not strengthen this argument. This testimony establishes only that Heisler paid one of Associates' checks, despite insufficient funds, due to a mechanical error; and that, had he thought of it, Heisler might have realized that the check was being used to pay for securities and that Associates had deliberately overdrawn its account. (Testimony at 312–13, 324, 342–43) Based on this testimony, Halcyon argues that defendants had knowledge of an "improper scheme." (Plaintiff's Memorandum at 9) Taken together, these facts fall far short of establishing that Associates was defrauding Halcyon.

toward Halcyon, which would have created a duty to determine the exact-nature of Associates' activities. See *Woodward v. Metro Bank of Dallas,* 522 F.2d 84 (5th Cir. 1975). The claim of aider and abettor liability is therefore dismissed.

### B. Conspiracy

The allegation of conspiracy must be dismissed for the same reasons which require rejection of the claim of aider and abettor liability. To recover on a claim of conspiracy to violate Rule 10b-5, Halcyon must allege that Chase and Heisler acted with scienter. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); see also *Dopp v. Franklin,* 374 F.Supp. 904, 910–11 (S.D.N.Y.1974). Where, as indicated above, plaintiff has failed to allege that defendants knew of the fraud, it has not stated a claim on which relief can be granted.

### IV.

### Negligence

Halcyon accuses Chase and Heisler of negligence in honoring Associates' overdrafts and in failing to inform Halcyon of Associates' fraudulent activities. (Complaint at ¶¶ 48 and 49) While the only basis of federal jurisdiction asserted by plaintiff is the Exchange Act, it has not alleged that any specific section has been violated in regard to its negligence claim. We agree with the defendants that the provisions of Rule 12(e) of the F.R.Civ.P. entitle them to a more particular statement as to the section of the statute allegedly violated. Accordingly, the complaint will be dismissed unless within ten days of the filing of this order Halcyon submits an amended complaint specifying what section of the Exchange Act has been violated by defendants' alleged negligence. Since the other federal claims are dismissed, no jurisdiction will exist unless Halcyon can allege in good faith a violation of a provision of this statute.

For the reasons stated above, the motion to dismiss is granted.

It is so ordered.