[No. B047375. Second Dist., Div. Four. June 19, 1991.]

MARSHALL MARS, Plaintiff and Appellant, v.
WEDBUSH MORGAN SECURITIES, INC., Defendant and Respondent.

COUNSEL

William R. Hess for Plaintiff and Appellant.

Keesal, Young & Logan, Terry Ross and Michele Fron for Defendant and Respondent.

OPINION

**GOERTZEN, J.**—Plaintiff/appellant Marshall Mars (appellant) appeals from the judgment entered upon the granting of the motion for summary judgment of defendant/respondent Wedbush Morgan Securities, Inc. (respondent).[1] Appellant had sued First United Securities Group (First United); respondent; and Dennis Kantor, First United's owner, in an attempt to recover investment losses appellant suffered allegedly because of the defendants' actions.[2]

For the reasons discussed below, we affirm.

### FACTS AND PROCEDURAL HISTORY

On September 9, 1988, appellant filed his complaint against First United, respondent, and Kantor for breach of fiduciary duty, fraud, negligence, unauthorized trading of stock, and excessive trading of stock. Therein, appellant alleged the following. In November 1986, First United, represented by Kantor, became appellant's securities broker. At that time, First United

---

[1] In the complaint respondent is sued as "Wedbush Corp."

[2] Because appellant apparently has been unable to serve First United or Mr. Kantor, they are not parties to this appeal.

and Kantor promised they would fully inform him of all material facts affecting each trading activity executed for him, would not trade on his account with borrowed funds or increase his financial risks without first discussing the matter with him and obtaining his consent, would trade in accordance with all rules and regulations published by First United in its manuals and contracts, would abide by all applicable local, state and federal laws and regulations, and would accurately report his securities transactions. Beginning in November 1986, through August 1987, appellant invested about $50,000 with First United. In November 1987, appellant ordered First United to sell all his stock and close his account. From November 1986, through November 1987, defendants "falsely reported [appellant's] trading activity; bought and sold securities for [appellant] without his consent and knowledge; caused [appellant] to borrow against equity without his knowledge and consent and without taking into consideration or explaining to [appellant] the financial risks involved; failed to present [appellant] with all material facts affecting each transaction contemplated and entered into by [appellant] at the Defendants' solicitation and/or information; failed to execute sale orders upon demand by [appellant]; and caused [appellant] to trade excessively and without regard for the suitability of the investments made or the profitability of the trades."

On October 27, 1989, respondent filed its motion for summary judgment or, alternatively, for summary adjudication of issues. Respondent admitted that it was a member of the New York, American, and Pacific Stock Exchanges and that it had entered into a clearing agreement with First United on July 6, 1983. Respondent asserted, however, that it could not be sued for the losses suffered by appellant because according to the terms of the clearing agreement between it and First United and the letter of understanding between appellant and First United, appellant was a client of First United, not of respondent; consequently, no fiduciary duty existed between it and appellant. Respondent argued that it had fully complied with its duties pursuant to the clearing agreement. Respondent further pointed out that appellant had executed a letter of understanding with First United, which indicated his acceptance of the arrangement made between respondent and First United and of the fact that he was the client/customer of First United, not respondent.

Included with respondent's motion were copies of the clearing agreement between First United and respondent, the letter of understanding between appellant and First United, an excerpt of appellant's deposition testimony, and the declaration of Marie Eaton, assistant vice-president of respondent.

By the terms of the clearing agreement, respondent was to act as the agent for First United, performing certain administrative duties[3] such as executing transactions in First United's clients' accounts and releasing or depositing monies or securities to or for First United's customers upon authorization from First United; for all purposes the clients were First United's and not respondent's; First United agreed it would notify its clients of the nature of respondent's relationship and secure the clients' agreement of same; and First United would be responsible for complying with all pertinent professional, local, state and federal laws and regulations. The clearing agreement further provided that respondent was not to "be responsible to any of [First United's] clients for losses suffered by them except losses suffered as a result of [respondent's] failure to perform the specific duties undertaken . . . pursuant to [the] agreement."

The letter of understanding informed appellant that an account in his name had been opened with respondent, on a "correspondent broker" basis, respondent would provide "order execution and certificate clearance on [First United's] instructions," respondent would not be involved with or have responsibility for decisions regarding transactions in appellant's account, appellant would continue as First United's customer, First United would be responsible for all activities in connection with appellant's account, and any inquiries or complaints should be directed to it. The bottom half of the letter, entitled "Account Agreement, Taxpayer Certification, and Beneficial Ownership Election," among other things, stated: "I understand and agree that my account is to be handled in the manner described above." Appellant executed this letter on October 22, 1986.

In his deposition testimony, appellant stated that he did not believe he had ever contacted respondent with respect to anything involving his account.

---

[3]In pertinent part, paragraph 3 of the clearing agreement provided that respondent would undertake the following duties: "Execution of orders except in those instances wherein we agree that you [First United] will execute such orders; clearance and settlement of transactions; rehypothecation and lending of securities, maintenance of margin, payment and charging of interest as well as monitoring of compliance with Regulation T and other applicable credit regulations; preparation and mailing of your client account records including confirmation and monthly or quarterly account statements; account and security transfers, payment of dividends and dissemination of proxy, tender offer and other similar shareholder materials received by us. In addition, except as provided below, we will construct and maintain prescribed books and records of all transactions executed and cleared through us, including a daily record of required margin and other information required by SEC Rules 17(a)3 and 17(a)4. For the purposes thereof, you will promptly provide us with basic data and documents, including but not limited to, copies of records of any receipts of client funds and securities received directly by you, as shall be necessary or appropriate to permit us to discharge our obligations hereunder. You will also provide us with such information as we may request for the opening and carrying of your clients' accounts together with approvals of each such account by one of your officers, semi-annual unaudited financial statements and the results of your annual audit."

The declaration of Ms. Eaton, respondent's assistant vice-president, reiterated the terms of the clearing agreement and the letter of understanding. Ms. Eaton also declared that the "entry of orders, any instructions regarding the deposit or withdrawal of securities or money, and all transactions regarding [appellant's] account were done pursuant to instructions received . . . from First United and its agents"; during the period October 1986, through January 1988, respondent did not sell securities to appellant; and that prior to filing the lawsuit, respondent had received no complaints from appellant in connection with the services respondent had agreed to provide.

Appellant filed a motion for leave to file an amended complaint, which was denied.

In opposition to the motion for summary judgment, appellant argued that respondent had violated various federal securities laws which had not been pleaded in the complaint, and, in sum, countered that as a clearing broker, respondent could be held liable for the unlawful acts of the broker; and that as triable issues of fact existed as to the exact relationship between First United and respondent, the motion for summary judgment should be denied. Appellant filed no counter declarations or affidavits of any kind.

On December 1, 1989, the hearing on the motion was held. The court granted the motion for summary judgment, finding that any case which appellant might have was against First United, not respondent. Judgment in favor of respondent was entered on December 1, 1989.

This timely appeal followed.

### STANDARD OF REVIEW

"Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. [Citations.] [¶] The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory. [Citation.] The affidavits of the moving party are strictly construed and those of his [or her] opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion. [Citation.] [I]ssue finding rather than issue determination is the pivot upon which the summary judgment law turns. [Citation.]" (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134], internal quotation marks and ellipses omitted.)

"This task is limited to addressing those issues or theories of liability raised in plaintiff's complaint. The papers filed by the party opposing

summary judgment must also be directed to the issues raised in the complaint; therefore, the opposing papers may not create issues outside of the pleadings. [Citations.]" (*Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988, 994 [216 Cal.Rptr. 796].)

With these rules in mind, we turn to the case before us.

## DISCUSSION

In granting the motion, the court found, as a matter of law, that as a clearing broker, respondent owed no duty to appellant other than those respondent undertook to perform as a clearing broker; as First United's agent, respondent was not liable for First United's conduct; no evidence of wrongdoing was alleged or established on the part of respondent in connection with its duties as a clearing broker; and that respondent did not act negligently towards appellant. We are in accord.

The clearing agreement between respondent and First United and the letter of understanding between appellant and First United establish that appellant was a client of First United, not respondent. When appellant executed the letter of understanding, he agreed that First United would continue to be responsible for all activities in connection with his account. As noted by the court in *Van Luven* v. *Rooney Pace, Inc.* (1987) 195 Cal.App.3d 1201, 1203 [241 Cal.Rptr. 248], "an introducing broker [here, First United] is the firm whose account executives deal with customers, i.e., solicit orders and offer recommendations. A clearing broker, on the other hand, has no client contact, but places and executes orders with the exchange at the direction of the introducing broker." In the clearing agreement, First United accepted the responsibility for all activities in appellant's account. The letter of understanding put appellant on notice of the relationship between the parties and protected respondent from liability for any misconduct by First United.

Moreover, respondent owes no fiduciary duty to appellant. The clearing agreement indicates that respondent agreed to act as an agent of First United; consequently, respondent had a fiduciary relationship with First United, the principal. (See 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 41, pp. 53-54.) Respondent, however, generally owes no fiduciary duty to *appellant.* (*Edwards & Hanly* v. *Wells Fargo Securities, etc.* (2d Cir. 1979) 602 F.2d 478, 484, cert. den. (1980) 444 U.S. 1045 [62 L.Ed.2d 731, 100 S.Ct. 734].) By the terms of the clearing agreement and letter of understanding, respondent did not control appellant's account. Respondent acted only upon instruction of First United, an arrangement to

which appellant freely agreed. Respondent, as the clearing broker, had no direct contact with appellant; it did not recommend transactions, give advice or determine suitability of the trading. Respondent was not appellant's investment broker. (See *Petersen* v. *Securities Settlement Corp.* (1991) 226 Cal.App.3d 1445, 1453-1456 [277 Cal.Rptr. 468]; Cf. *Twomey* v. *Mitchum, Jones & Templeton, Inc.* (1968) 262 Cal.App.2d 690, 709 [69 Cal.Rptr. 222].)

The factual allegations supporting a claim of negligence, appearing in paragraphs 9 through 18 of the complaint, speak to the actions of First United and Kantor, not respondent. As enumerated in footnote 3, *supra*, pursuant to the clearing agreement, respondent's duties with respect to appellant's account consisted of actions which were operational or ministerial in nature. (See *Carlson* v. *Bear, Stearns & Co. Inc.* (7th Cir. 1990) 906 F.2d 315, 318.) The only language in the complaint related to respondent's enumerated duties is the allegation that respondent "falsely reported [appellant's] trading activity" after promising that it "would accurately and honestly report" securities transactions effected and executed for his account. Yet, in opposing the motion for summary judgment, appellant presented no evidence to create a genuine issue on the question of whether the alleged misreporting was a "but-for" cause of his losses. (See *Neiman* v. *Clayton Brokerage Co. of St. Louis, Inc.* (N.D.Ill. 1988) 683 F.Supp. 196, 200.)

Appellant contends, however, that an issue remains regarding the relationship between First United and respondent and whether respondent had a duty to supervise First United. We cannot agree. The clearing agreement between First United and respondent defines their relationship and sets forth the rights, duties and liabilities of each party. The clearing agreement conformed to the requirements of rule 382 of New York Stock Exchange and rule 400 of the American Stock Exchange.[4] Pursuant to this contract, respondent had no responsibility to supervise First United or Kantor. Respondent had no power over First United; it acted as an order taker for First United's accounts and cannot be liable for any trading decision made by First United. (See *Neiman* v. *Clayton Brokerage Co. of St. Louis, Inc.*, *supra*, 683 F.Supp. at p. 201.) In fact, by deposition, appellant testified that he did not believe that he had ever contacted respondent about anything to do with his account.

■ Finally, we discuss whether a triable issue of fact exists as to whether respondent committed fraud. Respondent was First United's agent.

---

[4]New York Stock Exchange rule 382 and American Stock Exchange rule 400 require all carrying agreements between a member and another, relating to the carrying of customer accounts, be approved by the exchange prior to becoming effective, set forth the functions and responsibilities of the introducing and carrying organizations which should be addressed in the agreement; and mandate that each customer whose account is introduced on a fully disclosed basis be notified in writing upon the opening of his or her account.

Generally, an agent is not held liable for the fraud of a principal, unless the agent knows of or participates in the fraudulent act. (2 Witkin, Summary of Cal. Law, *supra*, Agency and Employment, § 151, pp. 145-146; Rest.2d Agency (1958) § 348, pp. 112-113.) Here, the fraud alleged purportedly occurred through the investment machinations practiced by First United and Kantor. In order for respondent to be held liable for this alleged fraud, appellant would have to prove that respondent " 'exercised control over . . . the people directly liable.' [Citations.]" (*Neiman* v. *Clayton Brokerage Co. of St. Louis, Inc.*, *supra*, 683 F.Supp. at p. 201.) "Control almost always means the practical ability to *direct* the actions of those directly liable." (*Ibid.*, internal quotation marks, ellipses and brackets omitted, italics in original.) As noted above, the clearing agreement clearly provides that respondent exercised no such control over First United or Kantor. Appellant presented no competent evidence which negated the provisions of the clearing agreement or which created a triable issue of fact in this regard.

In presenting his arguments, appellant relies solely on *Faturik* v. *Woodmere Securities, Inc.* (D.S.D. 1977) 442 F.Supp. 943. The *Faturik* case arose after the federal equivalent of a demurrer was sustained without leave to amend. The court reversed, finding that the pleadings *could* be amended to state a cause of action for violation of rule 10b of the Securities and Exchange Commission. The present case arrives here after the granting of a motion for summary judgment; therefore, the pertinent appellate rules and analysis differ completely from those applied in *Faturik*.

### DISPOSITION

The judgment is affirmed.

Woods (A. M.), P. J., and Epstein, J., concurred.