**Francisco Luis RIVERA, et al., Plaintiffs,**

v.

**CLARK MELVIN SECURITIES CORP., et. al., Defendants.**

**No. 98–2122 JP.**

United States District Court, D. Puerto Rico.

July 29, 1999.

María S. Kortright–Soler, San Juan, PR, for Plaintiff.

Guillermo J. Bobonis, San Juan, PR, Guillermo J. Ramos–Luiña, Hato Rey, PR, Rachel Brill, Hato Rey, PR, Jeffrey M. Williams, Indiano, Williams & Weinstein–Bacal, San Juan, PR, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. Introduction and Background

Before the Court is Defendant Pershing's Motion to Dismiss, or in the Alternative, to Stay Court Proceedings and Compel Arbitration, with Accompanying Memorandum of Law (docket No. 52), Plaintiffs' Motion in Opposition to Defendant Pershing's Motion to Dismiss of May 26, 1999 (docket No. 54), Defendant Clark Melvin Securities Corporation's Motion to Stay the Proceedings and Compel Arbitration (docket No. 51), and Plaintiffs' Motion Opposing Clark Melvin's Motion to Stay (docket No. 55).

Plaintiffs Francisco Luis Rivera, Gloria Alcocer de Rivera and their conjugal partnership ("Plaintiffs") filed their Complaint on October 7, 1998, alleging violations of Section 10(b) of the Securities Exchange Act of 1934. Defendants are Clark Melvin Securities Corporation ("Clark Melvin") and Pershing Division of Donaldson Lufkin & Jenrette Securities Corporation ("Pershing").[1] On February 5, 1999, Plaintiffs moved to amend their Complaint to account for the voluntary dismissal of Defendant Securities Investors Protection Corporation ("SIPC"), as well as to "set forth a specific and particular pleading as to the fraudulent conduct of Clark Melvin." (Pls.' Mot. For Leave of Ct. to Amend Compl. as Tendered at ¶ 3). The Court granted Plaintiffs' Motion to Amend their Complaint on February 9, 1999. Plaintiffs allege that they were defrauded by Clark Melvin, through its employees Hernán Pérez and Richard Prann, out of $145,196.00 of their $188,115.00 investment portfolio. Plaintiffs also allege that Defendant Pershing had a duty to detect the forgeries through which Pérez misappropriated their funds.

In an extensive Opinion and Order dated May 14, 1999, the Court denied the Defendants' Joint Motion to dismiss for failure to plead with sufficient particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act. *See Rivera v. Clark Melvin Securities Corp.*, 59 F.Supp.3d 280 (D.P.R.1999). The Court held that Plaintiffs had pled with sufficient particularity to sustain claims for churning, unsuitability, and unauthorized trading on their account. Further, the Court held that the Complaint sufficiently pled facts by which Defendant Clark Melvin could be held liable under a respondeat superior theory or as a control person under Section 20(a) of the Securities Exchange Act. The Court, however, dismissed Plaintiffs' claims regarding alleged misrepresentations that were not made in connection with the sale or purchase of a security.

Co-defendant Pershing now seeks to dismiss Plaintiffs' claims against it because Pershing's relationship with Plaintiffs is exclusively that of a clearing agent, and thus, it cannot be held liable for the fraudulent or illegal acts of the introducing broker, Clark Melvin, or its employees. Pershing also asks the Court to enforce a binding arbitration clause in a Margin Agreement purportedly signed by Plaintiffs, if the Court decides not to dismiss the Complaint. Pershing has titled its motion a "Motion to Dismiss;" however, Pershing has also included several exhibits for the Court's consideration. In addition, Clark Melvin also asks the Court to stay the instant proceedings because of the ar-

---

1. Co-defendant Samuel Ramírez was voluntarily dismissed from the case on July 16, 1999.

bitration clause in the Margin Agreement, which Clark Melvin asserts requires Plaintiffs to arbitrate their claims.

## II. Discussion

### A. Conversion of Pershing's Motion to Dismiss into a Motion for Summary Judgment

Although Pershing describes its motion as a Motion to Dismiss, by presenting exhibits for the Court and Plaintiff's consideration, Pershing invites the Court to consider the motion as one for summary judgment. Under Rule 12(b) of the Federal Rules of Civil Procedure, when:

> matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b). Plaintiffs specifically responded to the exhibits proffered by Pershing and further, included additional exhibits in their motion. Thus, the parties had an opportunity to present evidence in support of their position and were effectively notified that the Court would treat the Motion to Dismiss as a Motion for Summary Judgment. *See Maldonado v. Domínguez*, 137 F.3d 1, 5–6 (1st Cir.1998); *Garita Hotel Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 18–19 (1st Cir.1992).

The Court further notes that Plaintiffs recognize that the inclusion of documents with Pershing and Plaintiffs' motions requires the Court to consider Pershing's motion as a motion for summary judgment. (Pls.' Opp'n. at p. 9, ¶ 22). Plaintiffs ask the Court to defer consideration of Pershing's motion to compel arbitration until discovery has been completed because they believe the depositions of Plaintiffs would aid the Court in its determination. Since the Court does not reach the arbitration issue as it relates to Pershing, Plaintiff's request is moot. In addition, as will be discussed further below, Plaintiffs will have ample opportunity to present evidence in support of their claim of fraud as to the arbitration clause in relation to Clark Melvin's motion to compel arbitration.

### B. Uncontested Facts

Although the parties did not file statements of uncontested facts, based on the Initial Scheduling Conference Order, the parties' assertions in their motions, and the exhibits included with the parties' motions and not contested, the Court finds that the following facts are not in dispute.

1. Until December 1994, Plaintiffs were customers of Paine Webber, and Hernán Pérez and Richard Prann were the account executives assigned to their account.

2. Some time in 1994, Pérez and Prann left Paine Webber to work for Clark Melvin.

3. In December 1994, Plaintiffs signed documents to effect the transfer of their assets from Paine Webber to Clark Melvin, and at the time of the transfer, their assets were valued at $188,115.00.

4. Francisco Luis Rivera suffered a stroke in 1994.

5. Clark Melvin's customers have lost approximately 2.4 million dollars misappropriated by Hernán Pérez.

6. On or about August 1995, someone under the supervision of Clark Melvin illegally cashed a check against Plaintiffs' savings account for the amount of $39,000.00.

7. On or about April 1996, someone under the supervision of Clark Melvin illegally cashed a check against Plaintiffs' savings account for the amount of $40,000.00.

8. The Court entered a partial judgment in the amount of $68,000.00 against Securities Investors Protection Corporation, in compensation for the $79,000.00 stolen from Plaintiffs'

savings account. Thus, only the amount of $11,000.00 remains in controversy regarding the forged checks.

9. At all times pertinent to this action, Pershing was a New York Stock Exchange clearing correspondent for Clark Melvin.

10. Co-defendant Samuel Ramírez has been voluntarily dismissed from the instant case.

11. Pershing signed a Fully Disclosed Clearing Agreement ("Clearing Agreement") with Clark Melvin on August 21, 1995, which, in part, provides the following:

> From the opening of business on or about October 11, 1995, until the termination of this Agreement as provided for in Paragraph 21 hereof, Pershing shall carry the cash and margin accounts of the customers of Broker introduced by Broker to Pershing, and accepted by Pershing, and shall clear transactions on a fully disclosed basis for such accounts, in the manner and to the extent set forth in this Agreement. Section 2.0, p. 1.

> Pershing shall perform normal and reasonable cashiering functions for customer accounts introduced by Broker. These functions shall included receipt and delivery of securities purchased, sold, borrowed, and loaned; receipt and payment of funds owed by or to customers; and provision of custody for securities and funds... Section 9.1.1, p. 6.

> Pershing may, but is not required to, authorize certain of Broker's employees to sign checks to Broker's customers for amounts due to, and requested by them, with respect to their accounts. Broker shall designate in writing the names of any employees it wishes to receive the authorization described in this subparagraph. All checks must be signed by two employees who have received authorization from Persh-

ing. No check or checks totaling more than $100,000 shall be provided to any customer by Broker on the same business day ..., pp. 7–8, ¶ 9.18.

12. In addition, pursuant to the Clearing Agreement, Pershing shall not "be deemed to have a fiduciary relationship with any of [Clark Melvin's] customers," and "Pershing does not control the business or operations of [Clark Melvin]." ¶ 3.2. The Clearing Agreement also states that "Pershing shall have no liability to any of [Clark Melvin's] customers for any loss suffered by any customer." ¶ 16.0.

13. Pershing's Disclosure Statement, purportedly sent to Plaintiff, states the following:

> The Pershing Division of Donaldson, Lufkin & Jenrette Securities Corporation ("Pershing") is the New York Stock Exchange member clearing correspondent for the broker-dealer or other financial institution ("financial institution") with which you opened your securities account. Your financial institution is independent of Pershing and retained Pershing to provide certain record keeping and operational services, which may include execution and settlement of securities transactions, custody of securities and cash balances, and extension of credit on margin transactions. These services are provided under a written Clearing Agreement between Pershing and your financial institution. It is important that you understand the responsibilities of your financial institution and Pershing under the Clearing Agreement as outlined below.

14. Pershing was not the clearing agent when Plaintiff's first check was stolen in August 1995, but was the clearing agent when the second check was stolen on or about April 1996.

## C. Pershing's Liability as a Clearing Agent for Violations of Section 10(b) and Rule 10b–5 for the Acts of Clark Melvin and its Employees

Pershing argues that pursuant to the Fully Disclosed Clearing Agreement and New York Stock Exchange, Inc. Rule 382, Clark Melvin had total responsibility for supervising the transactions of its employees and assessing the suitability of investments, and further, that Plaintiffs were notified of this in writing and additionally, each time they received an account statement. Pershing asserts that, in accordance with the Clearing Agreement, their services were limited to the following, which do not permit it to be held liable for fraud under the securities laws based on relevant case law: the execution of transactions in customers' accounts and release or deposit of money or securities to and from the accounts; the preparation of confirmations and summary monthly statements; and the performance of cashiering functions including receipt and delivery of securities purchased, sold, borrowed and loaned.

Plaintiffs assert, without citing any case law in support of their position, that although Pershing is not liable for all the acts perpetrated by Clark Melvin's employees, Pershing had a duty to know "Plaintiff's cash in their custody, which in effect was stolen from their account," and "the margin transactions and interests charged on all unauthorized transactions." (Pls.' Opp'n. Mot. at ¶ 6). Plaintiffs also note that neither Clark Melvin nor Pershing have made any cross-claims against each other despite a hold harmless clause and requirement of a broker to maintain insurance coverage in the Clearing Agreement, although Plaintiffs do not explain the relevance of this fact to the Motion at issue. Plaintiffs devote the entirety of their Memorandum of Law to the arbitration issue and do not counter Pershing's assertion that it has no duty or liability to Plaintiffs as a clearing agent.

Since the instant motion is to be treated as a motion for summary judgment, Rule 56(c) of the Federal Rules of Civil Procedure applies. Under Rule 56(c), summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248, 106 S.Ct. 2505; *Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989).

The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See Goldman v. First National Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993); *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). In meeting its burden, the non-moving party must produce enough evidence to show that it is entitled to a trial, not that it will necessarily be successful at trial. *Casas Office Machines, Inc. v. Mita Copystar America, Inc., et. al.*, 42 F.3d 668, 686 (1st Cir.1994) (citing *First Nat'l Bank of Arizona*, 391 U.S. at 288–89, 88 S.Ct. 1575). The Court views the instant motion within this framework.

Clearing agents, such as Pershing, provide services to brokerage firms, such as Clark Melvin, that generally include record-keeping functions and fulfilling the regulatory requirements for the brokerage firm. *See Riggs v. Schappell*, 939 F.Supp. 321, (D.N.J.1996); *Dillon v. Militano*, 731 F.Supp. 634, 636 (S.D.N.Y.1990). "The

brokerage firm is typically known as the 'introducing firm,' and the clearing agent handles the 'mechanical, record-keeping functions related to the clearance and settlement of various transactions' in the accounts for the introducing firms' customers." *Dillon*, 731 F.Supp. at 636 (quoting *Lester v. Basner*, 676 F.Supp. 481, 482 (S.D.N.Y.1987)). Normally, the only contact between a clearing broker and individual customer is the regular mailing of copies of reports and records relating to the account. *See Stander v. Financial Clearing & Services Corp.*, 730 F.Supp. 1282, 1285 (S.D.N.Y.1990). The retail broker, however, usually has direct contact with the client and orders trades for the client. *See id.*

Clearing brokers that perform the functions typically associated with clearing agents as described above are not generally liable to the customers of the introducing broker for losses resulting from acts of the introducing broker. *See Riggs*, 939 F.Supp. at 325 (clearing brokers generally not liable for losses "suffered by the acts of the introducing broker" when performing traditional functions.); *Dillon*, 731 F.Supp. at 636 (clearing broker not making decisions regarding the account, and thus, there is no fiduciary relationship and clearing broker cannot be primarily liable for securities fraud violation); *In re Atlantic Financial Management Inc.*, 658 F.Supp. 380, (D.Mass.1986) ("A clearing broker normally has no disclosure duty if the clearing function was the only role performed by the broker."); *Baum v. Phillips, Appel & Walden, Inc.*, 648 F.Supp. 1518, 1533 n. 18 (S.D.N.Y.1986) ("'The mere fact that a broker has acted as a clearing agent in circumstances where it is alleged, as here, that the registered representative of the introducing broker defrauded customers, is insufficient to impose controlling person liability on the clearing agent."); *Faturik v. Woodmere Securities, Inc.*, 442 F.Supp. 943, 945 (S.D.N.Y.1977) (clearing agent performing

traditional functions would not have control over account or requisite "scienter" for liability under § 10(b)).

In the instant case, there is no evidence that Pershing was acting beyond the role of a traditional clearing broker. Based on the record and Clearing Agreement, Pershing was to do the following: (1) execute transactions in customers' accounts and release or deposit of money or securities to and from the accounts; (2) prepare confirmations and summary monthly statements; (3) carry the cash and margin accounts of Clark Melvin customers introduced to and accepted by Pershing, (4) "perform normal and reasonable cashiering functions for customer accounts introduced by [Clark Melvin]," including receipt and delivery of securities purchased, sold, borrowed and loaned; and (5) authorize certain Clark Melvin employees to sign checks to Clark Melvin's customers.

Plaintiffs do not assert or attempt to prove that Pershing had any contact with them aside from the mailing of monthly account statements. Plaintiffs only point to the Clearing Agreement between Pershing and Clark Melvin and the disclosure statement Plaintiffs were supposed to have received, apparently for the proposition that Pershing owed a duty to Plaintiffs and can be held liable under section 10(b) because of the responsibilities described in these documents. Essentially, there is no claim or evidence that Plaintiffs and Pershing ever had a relationship other than that of a traditional clearing broker/investment customer, but rather, Plaintiffs assert that the traditional relationship confers liability on Pershing.

The Court finds that since there is no dispute as to Pershing's role as a traditional clearing agent in its dealings with Clark Melvin and Plaintiffs, no liability under Section 10(b) can attach. Further, the Court notes that there is no evidence that Pershing exercised any control over Plaintiffs' account, as is necessary to sustain claims under Section 10(b) or Rule 10b–5. *See Clark Melvin*, 1999 WL 388203 at \*7–

10; *Faturik*, 442 F.Supp. at 945. Thus, as a matter of law, the Court will not hold Pershing liable as a primary violator of Section 10(b).

■ There is also no basis for holding Pershing liable under either Section 20(a) of the Securities Act or traditional agency principles. *See In re Atlantic Financial Management, Inc.*, 784 F.2d 29, 32–33 (1st Cir.1986) (liability under Section 20(a) does not preclude the imposition of vicarious liability under common law). In its previous Opinion and Order, the Court held that Plaintiffs had sufficiently plead both respondeat superior liability and control liability under Section 20(a) to survive a Motion to Dismiss as to Defendant Clark Melvin. The claim against Pershing, however, cannot stand as there has been no evidence presented that the employees of Clark Melvin were acting as agents of Pershing, *see Riggs*, 939 F.Supp. at 326 (claim for vicarious liability would require a showing that "principals did something that caused the plaintiffs to believe that the [introducing broker] was acting on behalf of the [clearing brokers]") (citing Restatement (Second) of Agency § 27); *Katz v. Financial Clearing & Services Corp.*, 794 F.Supp. 88, 94 (S.D.N.Y.1992) ("An introducing broker is not acting as an agent of the clearing broker when the introducing broker makes fraudulent misrepresentations to its customers."), or that Pershing exercised any control over Clark Melvin so as to confer liability under Section 20(a) of the Securities Act, *see Dillon*, 731 F.Supp. at 638 (since introducing broker hired clearing agent to perform record-keeping functions, would be incongruous to hold that clearing broker controlled the introducing broker absent evidence of direct or indirect influence over policy and decision-making process).

■ Finally, although Plaintiffs do not argue nor plead that Pershing could be held liable as an aider or abettor under section 10(b), the Court notes that based on the facts before it, Pershing could not be held liable under this theory. To be held liable as an aider and abettor, a clearing agent must "kn[ow] of the wrong and substantially assist[ ] in perpetuating it." *See Ross v. Bolton*, 904 F.2d 819, (2d Cir. 1990). The record is devoid of any evidence that Pershing knew of the fraud committed by Clark Melvin's employees or that it substantially assisted in perpetuating the fraud. *See Faturik*, 442 F.Supp. at 945 (facts alleged that clearing agent may have had knowledge of fraud including that offices were in same building and on same floor as introducing broker, both firms enjoy a close working relationship, and knowledge of vigorous activity on plaintiff's account sufficient to survive a motion to dismiss for aider and abettor liability). Thus, Plaintiffs could also not recover from Pershing under an aider and abettor theory.

Therefore, because Pershing cannot be held liable for any violations of section 10(b) in its traditional duties as a clearing agent as a matter of law, the Court hereby **GRANTS** Pershing's Motion and **DISMISSES** the above-captioned Complaint as to Co-defendant Pershing.

### D. Clark Melvin's Motion to Stay and Compel Arbitration

■ The Court now turns to Clark Melvin's Motion to stay the discovery in this case and to compel Plaintiffs to arbitrate the claims asserted by them in accordance with a Margin Agreement. Clark Melvin asserts, without citing to any relevant case law, that the Margin Agreement, signed by Plaintiffs, contains a provision requiring pre-dispute arbitration, and thus, the Court must stay the instant proceedings pending arbitration of Plaintiffs' claims. Plaintiffs direct the Court's attention to their arguments in the opposition to Pershing's motion to compel arbitration, where they contest the legality of the arbitration clause. Plaintiffs do not acknowledge having signed any arbitration clause or margin agreement, claiming that they were only aware of signing documents that authorized the transfer of their assets

from Paine Webber to Clark Melvin. Plaintiffs assert that there can be no arbitration if the arbitration clause was induced by fraud, and thus, the Court should not stay the instant case but proceed to trial and determine the validity of the arbitration clause.

Section 2 of the Federal Arbitration Act ("FAA") "is a declaration of a liberal federal policy favoring arbitration agreements notwithstanding any state substantive or procedural policies to the contrary." *PaineWebber Inc., v. Elahi,* 87 F.3d 589, 593 (1st Cir.1996) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *Carro v. Parade of Toys, Inc.,* 950 F.Supp. 449, 451 (D.Puerto Rico 1996) (Pieras, J.). "The 'primary purpose' of the FAA is to ensure 'that private agreements to arbitrate are enforced according to their terms,'" but arbitration under the FAA is, nevertheless, a "matter of consent, not coercion...." *PaineWebber,* 87 F.3d at 593 (quoting *Volt Info Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).

Several courts have held that when a party contests the making of a contract containing an arbitration provision, the party cannot be compelled to arbitrate the "threshold issue" of the existence of an arbitration agreement, but rather, the Court must determine the existence of the agreement to arbitrate. *Three Valleys Municipal Water District v. E.F. Hutton & Co.,* 925 F.2d 1136, 1141–42 (9th Cir. 1991); *see Aircraft Braking Systems Corp., v. Local 856, Int'l Union,* 97 F.3d 155, (6th Cir.1996) (question of whether a valid agreement to arbitrate exists at all is answered by the courts); *Magallanes Investment Inc., v. Circuit Systems, Inc.,* 994 F.2d 1214, 1217 (7th Cir.1993) ("the exis-

tence of a contract to arbitrate is usually a threshold question for the court not the arbitrator to decide"); *Chastain v. Robinson–Humphrey Co., Inc.,* 957 F.2d 851, 854 (11th Cir.1992) ("'if the validity of the agreement to arbitrate is in issue, a district court, not a panel of arbitrators, must decide if the arbitration clause is enforceable against the parties"); *see also MCI Telecommunications Corp. v. Matrix Communications Corp.,* 135 F.3d 27, 32 (1st Cir.1998) (citing *Three Valleys* with approval and stating "[f]raud in inducing acceptance of the arbitration clause unquestionably would negate the contractual agreement on that issue").

These courts, particularly the Ninth Circuit in *Three Valleys,* distinguished this holding from the United States' Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The *Three Valleys* Court pointed out that *Prima Paint's* holding, that a federal court may consider fraud in the inducement of a contract only if the fraud specifically relates to the arbitration clause itself and not to the contract generally, is limited "to challenges seeking to avoid or rescind a contract—not to challenges going to the very existence of a contract that a party claims never to have agreed to." *Three Valleys,* 925 F.2d at 1140.

The Court finds persuasive the *Three Valleys* decision and other circuit court cases with similar holdings.[2] Any contrary rule would "lead to untenable results." *Id.* The instant case falls squarely within these holdings as Plaintiffs allege fraud and dispute the very existence of the arbitration clause and contract. Plaintiffs assert that they never signed or agreed to submit their claims to pre-dispute arbitration. The Court must decide the threshold issue

---

**2.** The Court notes that the First Circuit in *MCI Telecommunications Corp. v. Matrix Communications Corp.,* did not specifically address the issue of whether a court and not an arbitrator must determine if there was an agreement to arbitrate. The *MCI* Court stat-

ed that fraud would "unquestionably" negate the contractual issue, but noted that Matrix had not raised the issue of fraud in the district court and held that it had forfeited its claim that the arbitration clause should be invalidated. *See MCI,* 135 F.3d at 33.

of whether an agreement to arbitrate existed, and thus, cannot submit this issue or Plaintiff's claim to arbitration.

As there is a genuine issue of fact concerning the formation of the arbitration agreement, the Court cannot decide as a matter of law that an agreement did or did not exist. Rather, the Court must hold an evidentiary hearing to determine whether such an agreement existed. *See McCarthy v. Providential Corp.*, No. C 94–0627 FMS 1994 WL 387852 at *2 (N.D.Cal. July 19, 1994). Since discovery has been completed in this case, the Court hereby **SETS** an Evidentiary Hearing on the issue of whether an agreement to arbitrate existed on August 17, 1999, at 9:30 a.m. and a Pretrial Conference on August 10, 1999, at 4:00 p.m. The parties **SHALL** submit Pretrial memoranda in anticipation of the Evidentiary Hearing, including the parties' legal positions, on or before August 6, 1999.

## III.  Conclusion

The Court finds that because the undisputed facts show that Pershing acted only within its traditional functions as a clearing broker, Pershing cannot be held liable for violations of Section 10(b) of the Securities Exchange Act of 1934 or Rule 10b–5. Further, since the issue of whether or not there was an agreement to arbitrate Plaintiffs' claims is one for the courts and not an arbitrator to decide, the Court will hold an Evidentiary Hearing on this issue on August 17, 1999, at 9:30 a.m.

**IT IS SO ORDERED.**