Alfred Linden HOWELL, Plaintiff,

v.

Charles FREIFELD, Harbor Investments, Inc., Heinold Commodities, Inc., Judith King, a/k/a/ Judy King, Gregory G. Olsen a/k/a/ Greg Olsen, and Gerald E. Carr, a/k/a Jerry Carr, Defendants.

No. 83 Civ. 1703 (PKL).

United States District Court, S.D. New York.

March 28, 1986.

Charles J. Hecht, P.C., New York City, for plaintiff.

Sidley & Austin, New York City (Steven M. Bierman, William J. Nissen, of counsel), for Heinold defendants.

Litman, Kaufman & Asche, New York City (Richard Asche, of counsel), for defendants Charles Freifeld and Harbor Investments, Inc.

LEISURE, District Judge:

This matter is before the Court on the motion of defendants Heinold Commodities, Inc. ("Heinold"), Judith King, Gregory Olsen and Gerald Carr (collectively referred to as the "Heinold Defendants"), for summary judgment dismissing the second, third and fourth causes of action asserted against them. Defendants Charles Freifeld and Harbor Investments, Inc. ("Harbor") have not joined in this motion. For the reasons presented below, the motion is denied as to the second and third causes of action, but is granted as to the fourth cause of action.

### Factual Background

Plaintiff Alfred Linden Howell ("Howell") seeks in this action to recover alleged losses of $821,516.72 incurred in connection with a discretionary commodity futures trading account maintained by him with Heinold during 1979 and 1980. Defendants Freifeld and Harbor acted as investment advisors to Howell, having been granted trading authority pursuant to a power of attorney. The account was opened following discussions with Heinold employees, including defendants King, Olsen and Carr.

At the time he opened the account with Heinold, plaintiff had limited investing experience. He had invested in gold, owned some real estate, and once had a securities account for a period of three or four months. He approached Heinold to begin investing in commodities, about which he admittedly knew little.

Plaintiff alleges that the Heinold Defendants persuaded him to open the account with marketing brochures and other documents which represented the trading record of Freifeld and Harbor in a favorable light. The Heinold Defendants represented to plaintiff that they would work with Freifeld and Harbor to manage plaintiff's account in a conservative fashion. Plaintiff was assured that the combination of Heinold's supervision and Freifeld's conservative trading techniques would prevent substantial losses. After he made initial deposits of $25,000 and $125,000 in the summer and fall of 1979, plaintiff alleges that defendants persuaded him to commit to his account the proceeds of a $750,000 certificate of deposit about to come due. During the meetings and discussions with defendants that preceded his decision to invest the certificate of deposit proceeds, plaintiff claims that defendants emphasized to him that the placement of stop-loss orders would guarantee that he could not lose more than 50% of his investment.

While the account was maintained, plaintiff communicated with the Heinold Defendants and had no contact with Freifeld. In February, 1980, substantially all of plaintiff's funds had been committed to margin for commodity futures contracts traded in foreign markets centered in London, England. Apparently, the foreign markets are not as strictly regulated as the American commodities markets. Consequently, taking positions there entails greater risk for the investor than comparable investments in this country. Defendants never told plaintiff that a substantial portion of his assets would be committed to trading on foreign markets. At or about the end of February or early March, 1980, plaintiff was advised by King and Olsen

that everything was going well with his account. Plaintiff told them that he was going to California and they assured him that the account was in good hands with them.

On Friday, March 7, 1980, the market began to move in a direction adverse to the positions taken in plaintiff's account. Olsen and Freifeld noted this shift. Olsen recommended that steps be taken to reduce the exposure of plaintiff's account, but no actions were taken. By the time defendants arrived at work on Monday, March 10, 1980, at or around 9:00 a.m. New York time, there had been a precipitous drop in the foreign markets, which had been trading for some five hours by that time. Although defendants put in stop orders by 11:00 a.m. New York time, it was too late to save plaintiff's account from incurring an almost complete loss.

The complaint contains five causes of action. The first alleges fraud in connection with inducing plaintiff to open his account in violation of the Commodity Exchange Act, 7 U.S.C. § 6b(A), (B), (C) and (D), 7 U.S.C. § 6c(a), 7 U.S.C. § 6h, 7 U.S.C. § 6o(l) and the rules and regulations promulgated thereunder. The second cause of action alleges fraud in the operation and maintenance of plaintiff's account in violation of the aforementioned sections of the Commodity Exchange Act. In addition to realleging the allegations of the first cause of action, this claim details how plaintiff's account was fraudulently managed. The third cause of action alleges negligence. Plaintiff has consented to dismissal of the fourth cause of action, which alleged negligent infliction of emotional distress suffered by plaintiff as a result of losing his life's savings. The fifth cause of action alleges common law fraud and seeks compensatory and punitive damages.

The Heinold Defendants move to dismiss the second and third causes of action on the grounds that since Freifeld and Harbor were given exclusive authority to make investment decisions on plaintiff's behalf, the Heinold Defendants cannot be responsible for the losses plaintiff suffered. In support of this contention, the Heinold Defendants cite to documents plaintiff signed which state that Heinold's role with respect to the account was to be limited to executing the trades which were ordered by Harbor and Freifeld and that Heinold would not be responsible to plaintiff for any losses caused by the actions of Harbor and Freifeld. In addition, plaintiff signed a risk disclosure statement which acknowledged that commodities trading was very risky and that all of his investment, and more, could be lost in an adverse market. There was an agreement with Freifeld and Harbor which gave plaintiff the right to terminate the account and liquidate all positions if the value of the account at the close of any business day was less than 50% of the amount initially invested. But, Heinold was not a party to this agreement. The Heinold Defendants argue that the allegations of the second and third causes of action, directed at defendants' failure to enter stop-loss or other orders to limit plaintiff's losses to 50% of his investment, should accordingly be dismissed as to them. They had neither the duty nor the authority to enter such orders without first being directed to do so by Harbor and Freifeld.

In deciding this motion, it is significant that plaintiff maintained a discretionary account with Heinold. This imposed upon Heinold "broad" fiduciary duties to plaintiff with respect to the management of the account. *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 461 F.Supp. 951, 953 (E.D.Mich.1978).[1] The cases cited by the Heinold Defendants to the contrary are inapposite since they describe the responsibilities of a broker executing trades for a non-discretionary account maintained by a sophisticated investor. The duties imposed in such a situation are more circumscribed. *Id.* The contentions of the parties on this motion raise

---

**1.** Case law developed under the securities laws is pertinent to cases decided under the Commodity Act. *Sherman v. Sokoloff,* 570 F.Supp. 1266, 1269 n. 9 (S.D.N.Y.1983); *CFTC v. U.S. Metals Dep. Co.,* 468 F.Supp. 1149, 1152 n. 5 (S.D.N.Y.1979) (Weinfeld, J.).

material factual questions whether Heinold and its employees breached a fiduciary duty to plaintiff.

■ Issues of material fact are presented in two other respects. First, factual issues exist with regard to the extent to which the Heinold Defendants gave assurances to plaintiff concerning the abilities of Freifeld/Harbor, the investment adviser they recommended. *Rolf v. Blyth, Eastman Dillon & Co.*, 637 F.2d 77, 80–81 (2d Cir.1980) (broker-dealer liable when it "actively lulled the investor by expressing confidence in the adviser without bothering to investigate whether these assurances were well founded"). Second, factual issues are presented with regard to the relationship between the Heinold Defendants and Freifeld and Harbor in the maintenance of the account. *Faturik v. Woodmere Securities, Inc.*, 431 F.Supp. 894, 896 (S.D.N.Y. 1977) (close working relationship of two firms); *Margaret Hall Foundation, Inc. v. Atlantic Financial Management, Inc.*, 572 F.Supp. 1475, 1480–81 (D.Mass.1983) (close relationship between two companies and use of one entity's name "to lend credibility" to the other); *Hawkins v. Merrill, Lynch, Pierce, Fenner & Beane*, 85 F.Supp. 104, 122 (W.D.Ark.1949) (clearing broker's knowledge of correspondent broker's method of trading).

■ The argument that plaintiff signed statements which purport to represent plaintiff's understanding that trading authority was vested in Freifeld/Harbor only and that Freifeld/Harbor and Heinold are unrelated, does not provide a sufficient basis to grant this motion for summary judgment. In *Embeita v. Heinold Commodities, Inc.*, [1984–86 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 22,594 (E.D.Va. 1985), the Court denied Heinold's summary judgment motion to dismiss plaintiff's claims which arose due to "its failure to supervise the handling of her accounts." *Id.* at 30,552. Heinold had argued that because plaintiff had signed certains documents "professing her understanding that [the advisor] was not the agent of Heinold," *id.*, no material issues of fact existed

on the issue of agency. The court rejected this contention, holding that "[p]arties to an agency relationship do not change the nature of that relationship merely by calling it something other than its legal name," *id.*, since "[a]gency is a legal concept which depends on the manifest conduct of the parties, not on their intentions or beliefs as to what they have done." *Id. quoting Interocean Shipping Co. v. National Shipping & Trading Corp.*, 523 F.2d 527, 537 (2d Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

> The Court must, therefore, look beyond the written statements of the parties and examine their conduct to determine whether any disputed issue of fact exists or any conflicting inferences could arise about the relationship between [the advisor] and Heinold.

*Embeita*, at 30,552. *Accord Berisko v. Eastern Capital Corp.*, [1984–86 Transfer Binder] Comm.Fut.L.Rep. ¶ 22,274 (CFTC 1984). In this case, the circumstances surrounding plaintiff's introduction to Freifeld/Harbor, as well as the nature of the subsequent contacts with the defendants and the cooperation between the defendants in the maintenance of plaintiff's account, lead the Court to conclude that there are disputed issues of fact and conflicting inferences concerning the relationship between Freifeld and Harbor and Heinold. The motion for summary judgment dismissing the second cause of action is denied.

■ The Heinold Defendants next seek to dismiss the third cause of action, which alleges negligence in the operation of the account and in the making of misrepresentations concerning Harbor's previous trading record. They argue that negligence actions are not available for the recovery of economic losses except where a party has contracted to perform services. *Consolidated Edison Co. v. Westinghouse Electric Corp.*, 567 F.Supp. 358, 363–66 (S.D.N.Y.1983). This argument assumes that Heinold had no contractual duties to investigate Harbor's track record or to supervise the activity of the account. The Court has already determined that material

factual issues exist as to whether the Heinold Defendants breached a fiduciary duty to plaintiff and whether the nature of the relationship between Freifeld/Harbor and Heinold amounted to some type of agency arrangement. These considerations require the Court to refrain from granting summary judgment on this claim, since resolution of these issues may entail a determination that Heinold was contractually bound to perform certain services for plaintiff with regard to his account.

### Conclusion

The motion for partial summary judgment to dismiss the second and third causes of action as against the Heinold Defendants is denied. The motion to dismiss the fourth cause of action is granted.

SO ORDERED.