OPINION
 

 SIMANDLE, District Judge:
 

 Plaintiffs, Robert and Helen Riggs and Walter and Vivian Beck, bring these two substantially similar lawsuits against numerous individual and entity defendants under federal and state securities laws as well as under state common law alleging that they were defrauded of sizable sums of money through the defendants’ investment of their retirement accounts in speculative stocks and securities. Presently before this court are the motions to dismiss, pursuant to Fed. R.Civ.P. 12(b)(6), of defendants Correspondent Services Corporation (hereinafter “CSC”) and Paine Webber, Inc. (hereinafter “Paine Webber”). Because the separate Complaints filed by the Riggs and the Becks are substantially similar, as well as that the separate motions to dismiss filed by CSC and Paine Webber are identical, both motions will be considered in the instant Opinion.
 

 This case presents interesting questions of the duties of clearing brokers (entities performing backroom functions in the securities industry, such as the transfer of ownership of shares and rendering bookkeeping statements of transactions) to the customers of the primary broker under the securities laws and the common law.
 

 Background
 

 The circumstances underlying this dispute stem from investments made on behalf of plaintiffs, Robert and Helen Riggs (hereinaf
 
 *323
 
 ter “the Riggs”) and Walter and Vivian Beck (hereinafter “the Becks”) by Steven Schappell. The Complaints allege that plaintiffs originally contacted defendant Schappell while he was a registered representative of Smith, Barney, Harris, Upham & Company, (hereinafter “Smith Barney”), a national investment brokerage, about opening an Investment Retirement Account (hereinafter “IRA”). After investing several hundred thousand dollars in a retirement account with Schappell at Smith Barney, plaintiffs were allegedly advised by Schappell that he had resigned from Smith Barney to become a General Partner in defendant Mercer Securities, Ltd. (hereinafter “Mercer Securities”). Schappell allegedly prevailed upon plaintiffs to transfer their IRA from Smith Barney to Mercer Securities, at which time a discretionary trading account was opened. Because Mercer Securities was a new firm, plaintiffs were allegedly assured by Schappell that their investments would be safe at Mercer due to its association with defendants CSC and Paine Webber, who were engaged to perform clearing services. As a result of investments made by Schappell, which allegedly departed from the conservative portfolio proposal designed specifically for plaintiffs, plaintiffs suffered substantial losses to their retirement accounts.
 
 [1]
 

 Plaintiffs filed the identical forty-count Complaints commencing the instant actions on October 23, 1995, naming Mercer Securities and its general partners, Schappell, through the executor of his estate, Bruce Schappell, William Ballantine Boyd, III, Thomas Tarantino, William Coleman, and Lawrence Stevens as defendants, as well as Paine Webber and its wholly-owned subsidiary CSC. Plaintiffs seek recovery from CSC and Paine Webber in counts twenty-three through twenty-seven of the Complaint, premising liability on theories of respondeat superior and apparent authority, asserting that CSC and Paine Webber are secondarily and vicariously liable for the conduct of Mercer and its principals under section 10(b) of Securities Exchange Act of 1934, as amended 15 U.S.C. § 78(j)(b) (hereinafter the “1934 Act”), and Rule 10b-5 promulgated thereunder, as well as pursuant to
 
 N.J.S.A
 
 § 49:3-71(a)(2). Plaintiffs also assert claims of common law negligence against CSC and Paine Webber in counts twenty-one and twenty-two, asserting that CSC and Paine Webber failed to conduct a proper investigation before accepting Mercer as a customer, failed to monitor the activities of Mercer during the time that CSC acted as a clearing house, failed to supervise the content of materials prepared by Mercer and sent to its clients, materials which included representations that defendants backed Mercer accounts, failed to monitor the type of transactions cleared for Mercer, and failed to satisfy the loss to plaintiffs’ accounts in accordance with representations made to plaintiffs.
 

 Jurisdiction in this matter is grounded in federal question, 28 U.S.C. § 1331, and plaintiffs’ state law claims are appropriately before the court pursuant to 28 U.S.C. § 1367.
 

 Discussion
 

 A Motion to Dismiss Standard
 

 A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted does not attack the merits of the case, but merely tests the legal sufficiency of the Complaint.
 
 See Nami v. Fauver,
 
 82 F.3d 63, 65 (3d Cir.1996). When considering a Rule 12(b)(6) motion, the reviewing court must accept as true all well-pleaded allegations in the Complaint and view them in the light most favorable to the plaintiff.
 
 See Scheuer v. Rhodes,
 
 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974);
 
 Jordan v. Fox, Rothschild, O’Brien & Frankel,
 
 20 F.3d 1250, 1261 (3d Cir.1994);
 
 Hakimoglu v. Trump Taj Mahal Assoc.,
 
 876 F.Supp. 625, 628-29 (D.N.J.1994),
 
 ajfd,
 
 70 F.3d 291 (3d Cir.1995). In considering the motion, a district court must also accept as true any and all reasonable inferences derived from those facts.
 
 See Oshiver v. Levin, Fishbein, Sedran & Berman,
 
 38 F.3d 1380, 1384 (3d Cir.1994);
 
 Schrob v. Catterson,
 
 948 F.2d 1402, 1405 (3d Cir.1991);
 
 Glenside West Corp. v. Exxon Co., U.S.A,
 
 761 F.Supp. 1100, 1107 (D.N.J.1991). A court may not dismiss
 
 *324
 
 the Complaint “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his elaim which would entitle him to relief.”
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).
 

 The question before the court is not whether the plaintiffs will ultimately prevail; rather, it is whether they can prove any set of facts in support of their claims that would entitle them to relief.
 
 See Hishon v. King & Spalding,
 
 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984). However, while the rules do not dictate that a “claimant set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests.”
 
 Baldwin County Welcome Center v. Brown,
 
 466 U.S. 147, 149-50 n. 3, 104 S.Ct. 1723, 1725 n. 3, 80 L.Ed.2d 196 (1984) (quoting
 
 Conley,
 
 355 U.S. at 47, 78 S.Ct. at 103).
 

 B. The Merits of Defendants’ Motion
 

 1.
 
 Defendants’ Argument that Clearing Broker Cannot Be Held Vicariously Liar ble for the Actions of the Introducing Broker
 

 Counts twenty-three through twenty-seven seek to hold CSC and Paine Webber vicariously liable, through theories
 
 of
 
 respondeat superior and apparent authority, for the wrongs allegedly committed by Mercer Securities under both section 10(b) of the 1934 Act and
 
 N.J.S.A
 
 § 49:3-71(a)(2).
 
 [2]
 
 Plaintiffs seek to impose liability on these defendants on the basis that CSC held Mercer Securities out to plaintiffs as its authorized agent by sending account statements to plaintiffs and by allowing Mercer to present written materials to their customers containing representations that CSC and Paine Webber backed Mercer accounts. Defendants CSC and Paine Webber argue that because of the limited role they played in the relationship between plaintiffs and Mercer Securities, they cannot be held responsible for the actions of Mercer under any theory and must be dismissed from this action.
 

 Clearing brokers, such as CSC, generally perform numerous backroom and record-keeping functions for the introducing broker.
 
 See Beauvais v. Allegiance Securities, Inc.,
 
 942 F.2d 838, 839 (2d Cir.1991);
 
 Broadcort Capital Corp. v. Dutcher,
 
 859 F.Supp. 1517, 1518 n. 1 (S.D.N.Y.1994) (“Clearing firms generally perform recordkeeping and other mechanical functions related to stock transactions for stock brokers.”);
 
 Fine v. Bear, Stearns & Co., Inc.,
 
 765 F.Supp. 824, 826 n. 2 (S.D.N.Y.1991) (“These services include comparing and settling transactions, producing and distributing confirmations and statements of account, maintaining the customer’s account, and processing dividends and proxy materials.”);
 
 Lester v. Basner,
 
 676 F.Supp. 481, 482 (S.D.N.Y.1987) (clearing brokers undertake “mechanical, record-keeping functions related to the clearance and settlement of various transactions”). Introducing brokers, such as Mercer Securities, are generally responsible for maintaining contact with the individual investor, and often provide investment advice.
 
 See Stander v. Financial Clearing & Services Corp.,
 
 730 F.Supp. 1282, 1285 (S.D.N.Y.1990) (“The clearing broker normally has no direct contact with individual customer, except for mailing copies of reports and records regarding the account to the customer on a regular basis. Trades are ordered through or by the retail broker, who has personal contact with the customer.”). In this case, it is the conduct of the introducing broker, Mercer, through its partner Steven Sehappell, which is alleged to have caused plaintiffs to suffer losses.
 

 Section 10(b) of the 1934 Act renders it: unlawful for any person, directly or indirectly ... [t]o use or employ, in connection with the purchase or sale of any security ... any ... deceptive device in contraven
 
 *325
 
 tion of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 

 Rule 10b-5, promulgated by the SEC pursuant to its delegation of authority by Congress, provides that it shall be unlawful, in connection with the purchase or sale of a security:
 

 (a) To employ any device, scheme, or artifice to defraud,
 

 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 

 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.
 

 17 C.F.R. § 240.10b-5.
 

 In this case, plaintiffs are not seeking to hold defendants CSC and Paine Webber liable as primary violators of the Act.
 
 See Kline v. First Western Government Securities, Inc.,
 
 24 F.3d 480, 487 (3d Cir.1994),
 
 cert. denied,
 
 — U.S.-, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994);
 
 Royal American Managers, Inc. v. IRC Holding Corp.,
 
 885 F.2d 1011, 1015 (2d Cir.1989). In order for the defendant to be held liable for a primary violation of Rule 10b-5, plaintiff must demonstrate: (1) material misstatements or omissions of material fact; (2) made with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; (5) and which proximately cause plaintiffs’ injury.
 
 See Kline,
 
 24 F.3d at 487. Generally, clearing brokers, performing the functions described above, are not liable to customers of the introducing broker resulting from losses suffered by the acts of the introducing broker.
 
 See Carlson v. Bear, Stearns & Co., Inc.,
 
 906 F.2d 315, 317-18 (7th Cir.1990);
 
 Burns v. Richfield Securities, Inc.,
 
 809 F.Supp. 860, 862 (D.Utah.1992);
 
 Katz v. Financial Clearing & Services Corp.,
 
 794 F.Supp. 88, 93-94 (S.D.N.Y.1992);
 
 Dillon v. Militano,
 
 731 F.Supp. 634, 636 (S.D.N.Y. 1990).
 
 [3]
 

 Plaintiffs do, however, seek to hold CSC and Paine Webber vicariously liable for the conduct of Mercer Securities on the basis of common law doctrines of agency. In particular, plaintiffs assert that respondeat superior liability may attach in the context of federal securities law violations through the doctrine of apparent agency.
 
 [4]
 
 Apparently, plaintiffs
 
 *326
 
 would assert that Sehappell and Mercer Securities were somehow agents of CSC and Paine Webber because Sehappell and Mercer provided plaintiffs the impression that CSC and Paine Webber were backing the Mercer accounts. Such a claim would require a showing that the
 
 principals
 
 — CSC and Paine Webber — did something that caused the plaintiffs to reasonably believe that Mercer was acting on behalf of CSC and Paine Webber.
 
 See
 
 Restatement (Second) of Agency § 27.
 
 [5]
 

 In any event, plaintiffs direct this court to numerous decisions, including that of the First Circuit Court of Appeals in
 
 In re Atlantic Financial Management, Inc.,
 
 784 F.2d 29, 32 (1st Cir.1986),
 
 cert. denied,
 
 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 877 (1987), authored by then Judge Breyer, which is illustrative.
 
 [6]
 
 In that ease, the First Circuit considered whether section 20(a) of the 1934 Act, codified at 15 U.S.C. § 78t(a), which provides for control person liability, is an exclusive remedy, such that it would foreclose holding a principal vicariously liable pursuant to common law agency principles, particularly that of apparent agency, in the absence of the preconditions, lack of good faith and inducement, set forth in section 20(a).
 
 [7]
 
 The court concluded that, on the basis of both fairness, in that between the party who has created the impression of agency and a victim, the former is better bearer of an uncompensated loss than the latter, and public policy, in that a doctrine such as this would encourage principals to prevent “unauthorized” misrepresentations, as well as on the basis of the Supreme Court’s implied approval in
 
 Hydrolevel,
 
 discussed
 
 swpra
 
 note 6, the Securities Act of 1934 does not preclude the assertion of liability based upon common law notions of apparent authority.
 
 [8]
 

 Id.
 

 Defendants are quick to note, however, as did the court in
 
 In re Atlantic Financial
 
 
 *327
 

 Management, Inc.,
 
 that the Third Circuit, the decisional law of which this court is bound to follow, as well as the Ninth Circuit, does not follow the majority view on this issue. In
 
 Rochez Brothers, Inc. v. Rhoades,
 
 527 F.2d 880, 883-86 (3d Cir.1975),
 
 cert. denied,
 
 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976)
 
 (“Rochez II”),
 
 the defendant, Rhoades, President of MS & R, Inc., was alleged to have violated Rule 10b-5 for failing to disclose to plaintiff, Executive Vice-President of MS & R, Inc., information affecting the value of plaintiffs MS & R, Inc. stock ultimately purchased by Rhoades. Rhoades, upon purchasing the stock from plaintiff, then resold the stock shortly thereafter.
 
 Id.
 
 at 883. Following a bench trial, the district court entered judgment against Rhoades, but dismissed the suit with regard to defendant MS & R, Inc., despite plaintiffs contention that the corporate defendant was secondarily liable for the conduct of the individual defendant.
 
 Id.
 
 at 884.
 
 [9]
 

 The Third Circuit, in affirming the district court’s grant of judgment, concluded that principles of agency were “inappropriate to impose secondary liability in a securities violation ease.”
 
 Id.
 
 This decision was grounded in the legislative history of section 20(a), which the Court concluded called for liability of controlling entities only where culpable participation was present, in that the alleged controller was able to directly or indirectly influence the policy and decision-making processes of those alleged to be controlled.
 
 Id.
 
 at 884-85. The court also examined the policies underlying respondeat superior liability and concluded that if the doctrine were to be applied in that case, it would impose a duty upon the corporation to supervise and oversee those parties who were dealing as individuals, and not for the benefit of the corporate entity, a duty previously not found in the 1934 Act.
 
 Id. See also Gould v. American-Hawaiian Steamship Co.,
 
 535 F.2d 761, 778-79 (3d Cir.1976) (“ordinary agency principles are not applicable in determining seeondary liability in securities violation cases”);
 
 VT Investors v. R & D Funding Corp.,
 
 733 F.Supp. 823, 827 n. 2 (D.N.J.1990). Therefore, the eases upon which plaintiffs rely, adopting the rationale articulated in decisions such as
 
 In re Atlantic Financial Management, Inc.,
 
 are inapplicable.
 

 The Third Circuit in
 
 Rochez II
 
 did not, however, completely foreclose the possibility of vicarious liability attaching through principles of agency. The court did, as plaintiffs point out, leave open a narrow exception to this broad based exclusion, and it is through this exception which plaintiffs seek to pursue their claim. The court in
 
 Rochez II
 
 concluded its discussion of agency principles by stating:
 

 We are not faced with the type of relationship that prevails in the broker-dealer cases where a stringent duty to supervise employees does exist. This duty is imposed to protect the investing public and make brokers aware of the special responsibility they owe to their customers. We can find no reason to impose this same duty in a situation like the one presently before us where the parties are dealing for themselves and for their own accounts.
 

 527 F.2d at 886. The Third Circuit, in
 
 Sharp v. Coopers & Lybrand,
 
 649 F.2d 175, 181-83 (3d Cir.1981),
 
 cert. denied,
 
 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982), subsequently elaborated on this standard in the context of a suit against an accounting firm which had rendered an investment-oriented opinion letter.
 
 [10]
 
 The court recognized that, under certain circumstances, employers assume special duties under the federal securities laws, particularly where “their conduct is likely to exert strong influence on important investment decisions.”
 
 Id.
 
 at 181. After reviewing a range of ease law from other circuits which imposed liability on the basis of respondeat superior, the court opined that “courts have emphasized the public trust of the firms involved, and the duty to supervise
 
 *328
 
 arising therefrom.”
 
 Id.
 
 at 182 (footnote omitted).
 

 The facts underlying the decision in
 
 Sharp
 
 aid in resolution of the instant motion to dismiss. In that case, plaintiffs invested in a series of limited partnerships designed as tax shelters promoted by Westland Mineral Corporations, involving exploration and drilling in search of natural resources. Westland, as part of its sales presentations, used two tax opinion letters issued by defendant Coopers, one signed by a partner (which was drafted by an employee) and one signed in the name of the firm itself. The second letter, signed by the firm, was drafted only after it was learned that Westland was using the first letter as part of its sales program.
 
 Id.
 
 at 178. Ultimately, Westland was indicted for securities violations and the Internal Revenue Service began denying the tax deductions claimed by plaintiffs. Plaintiffs brought suit against defendant Coopers, who had issued the tax opinion letters, and the district court concluded as a matter of law that the firm was liable to plaintiffs on the basis of agency principles for the conduct of its employee, in that the opinion letter drafted by the employee contained material misrepresentations and omissions.
 

 Applying the principles articulated above, the Third Circuit affirmed the district court, and in doing so, found significant that the second opinion letter was signed in the name of the firm as “this activity propelled [defendant] into a position in which the investing public would place their trust and confidence in it.”
 
 Id.
 
 at 183. Finding irrelevant the lack of actual knowledge or recklessness with regard to the misrepresentations and omissions, the court concluded that because the firm had actual knowledge that its letters would influence the investing public, it was required to exercise a “stringent duty to supervise” its employees similar to that found in the broker-dealer eases discussed in
 
 Rochez II. Id.
 
 at 184. Thus, on the basis of both
 
 Sharp
 
 and
 
 Rochez II,
 
 it is patently clear that liability will not be imposed pursuant to agency principles in the absence of compelling circumstances which evince an intent by the principal to cause reliance by a third party on individual investment decisions.
 

 Nevertheless, on the basis of the exception crafted in
 
 Rochez II
 
 and further elaborated upon in
 
 Sharp,
 
 plaintiffs argue that clearing brokers “are institutions that occupy a position of public trust in the securities industry and therefore, face liability no differently than broker-dealers when agents within their apparent authority violate securities laws.” (PL Br. at 9).
 
 [11]
 
 Even taking the allegations found in plaintiffs’ Complaints as true, as we must on a motion to dismiss, as well as all inferences that may be derived therefrom, plaintiffs have failed to state an appropriate claim for relief. The basis for plaintiffs’ argument stems from the allegations in the Complaint that CSC held Mercer Securities out to plaintiffs as its authorized agent by sending account statements to plaintiffs. (Complaint at ¶ 268(a)). Plaintiffs also allege that defendants allowed Mercer to present written materials to their customers containing representations that CSC and Paine Webber backed Mercer accounts.
 
 (Id.
 
 at ¶ 268(b)). From these allegations, it can be inferred that the existence of CSC and Paine Webber provided some degree of security in making their investments with Schappell at Mercer.
 

 There are, however, no allegations found in the Complaint indicating that plaintiffs had any direct communications with Paine Webber or CSC, other than receiving confirmatory mailings. In addition, plaintiffs do not allege, as they cannot based upon the facts set forth in the Complaint, that these defendants had any direct role in their decisions to make individual investments. Thus, CSC and Paine Webber are one step removed
 
 *329
 
 from the investment decision-making process found dispositive in
 
 Sharp
 
 and
 
 Rochez II,
 
 for, as clearing brokers, they or their employees were not responsible for providing actual investment advice or causing actual investment decisions. As such, even though it is alleged that the existence of CSC and Paine Webber buoyed plaintiffs’ decision to invest with Sehappell at Mercer, their claims must be dismissed, as there are no facts found in the Complaint which would give rise to the stringent duty to supervise called for by both
 
 Sharp
 
 and
 
 Rochez II.
 

 2. Defendants’ Argument that the Clearing Broker Cannot Be Held Liable for Negligence
 

 Plaintiffs also seek redress for their losses under common law negligence, theorizing that CSC and Paine Webber failed to supervise Mercer Securities in numerous manners and that this failure to supervise proximately caused their harm. Plaintiffs allege that these defendants failed to conduct a proper investigation before accepting Mercer as a customer for clearing house purposes, (Complaint at ¶ 246(a)), failed to monitor the activities of Mercer during the time that CSC acted as a clearing broker
 
 (id.
 
 at ¶ 246(b)), failed to supervise the content of materials prepared by Mercer and sent to its clients, materials which included representations that defendants backed Mercer accounts
 
 (id.
 
 at ¶ 246(c)), failed to monitor the type of transactions cleared for Mercer
 
 (id.
 
 at ¶ 246(d)), as well as failed to satisfy the loss to plaintiffs’ accounts in accordance with representations made to plaintiffs.
 
 (Id.
 
 at ¶ 246(e)).
 

 It is axiomatic to note, however, that before a party may be held liable for a breach of an obligation to another party, it must first be established that the party in fact owed a duty to act in a certain manner. A showing of tortious conduct, under New Jersey law, involves a demonstration by the plaintiff that there exists “some breach of duty, by action or inaction, on the part of the defendant to the individual complaining, the observance of which duty would have averted or avoided the injury.”
 
 Brody v. Albert Lifson & Sons,
 
 17 N.J. 383, 389, 111 A2d 504 (1955).
 
 See also Weinberg v. Dinger,
 
 106 N.J. 469, 484, 524 A2d 366 (1987) (“A cause of action founded upon negligence involves a breach of a duty of care that causes injury.”);
 
 Globe Motor Car Co. v. First Fidelity Bank, N.A.,
 
 273 N.J.Super. 388, 393, 641 A.2d 1136 (Law Div.1993),
 
 affd,
 
 291 N.J.Super. 428, 677 A.2d 794 (App.Div.1996);
 
 Kantonides v. KLM Royal Dutch Airlines,
 
 802 F.Supp. 1203, 1213 (D.N.J.1992) (“For a defendant to be liable, it must have breached a duty of care, which duty, if observed, would have averted the plaintiffs injuries.”). In eases involving ordinary negligence, the standard of care revolves around what a prudent person would done under similar circumstances.
 

 Defendants argue that plaintiffs’ claims for negligence, found in counts twenty-one and twenty-two of the Complaints, must be dismissed as a matter of law as CSC and Paine Webber owed no duty to these plaintiffs in light of their limited role in the relationship and functions that they performed. In rejoinder, plaintiffs assert that the duty owed to them by defendants arises from three independent sources. First, plaintiffs argue that the clearing broker possesses a “broad fiduciary duty” on the basis of its management of plaintiffs’ account, a duty that “transcends the mere processing of trades.” (PL Br. at 15-16). Second, this duty stems, plaintiffs assert, from defendants’ violation of a statutory or regulatory provision.
 
 (Id.
 
 at 17-19). Third, plaintiffs argue that this duty arises when a clearing broker violates industry custom and practice.
 
 (Id.
 
 at 20). Each of these arguments, addressed in turn below, must be rejected.
 

 a. The existence of a “broad fiduciary duty”
 

 Plaintiffs’ first argument, that they are owed a “broad fiduciary duty” from the clearing broker is simply contrary to established law. Numerous courts, as noted
 
 supra,
 
 have concluded that the clearing broker owes no duty to the client of the introducing broker.
 
 See Ross v. Bolton,
 
 904 F.2d 819, 824 (2d Cir.1990);
 
 In re Blech Securities Litigation,
 
 928 F.Supp. 1279, 1295-96 (S.D.N.Y.1996) (“Even if [the clearing broker] knew but failed to disclose a material
 
 *330
 
 fact, no plaintiff can claim to have been defrauded by that omission, because, as a matter of law, a clearing broker owes no duty of disclosure to the clients of an introducing broker.”);
 
 Bums,
 
 809 F.Supp. at 862 (“Generally, clearing brokers performing operational or ministerial duties are not liable to an investor or customer of the introducing broker where the customer suffers losses as a result of the introducing broker’s acts.”);
 
 Dillon,
 
 731 F.Supp. at 639 (“As the clearing broker performing bookkeeping functions, [it] owed no duty to the investors whose contact and relationship was solely with the introducing broker.”);
 
 Slander,
 
 730 F.Supp. at 1286 (“ ‘[A] clearing agent [ ] is generally under no fiduciary duty to the owners of securities that pass through its hands.’ ”) (citations omitted).
 

 The one authority to which plaintiffs cite for this proposition,
 
 Howell v. Freifeld,
 
 631 F.Supp. 1222, 1224 (S.D.N.Y.1986), does indeed impose a “broad” fiduciary duty upon those who manage investment accounts.
 
 Howell
 
 is inapposite, however, for in that case, plaintiff maintained a discretionary commodities futures trading account with the defendant from whom recovery was sought and upon whom the duty was imposed. In the instant case, plaintiff maintained no such discretionary account with CSC or Paine Webber, as these defendants merely provided clearing services for the accounts maintained by Mercer. Thus, it is clear that CSC and Paine Webber, as the clearing brokers, owed plaintiffs no “broad fiduciary duty” sufficient to support a cause of action sounding in negligence.
 

 b. The Existence of an Implied Right of Action
 

 Plaintiffs next assert that a duty arises from alleged violations of securities laws or rules promulgated by the SEC thereunder. Plaintiffs argue that section 6(b) of the 1934 Act, codified at 15 U.S.C. § 78(b), creates a duty on behalf of securities exchanges to investigate and supervise their member organizations and requires the exchanges to expel those members who engage in fraudulent conduct. Those exchanges which fail to do so, plaintiffs reason, are subject to essentially a negligence standard in assessing liability. Plaintiffs, recognizing that the defendants in this case are not exchanges, assert that similar regulatory functions are imposed upon clearing brokers under federal securities law, in that section 17A(b)(4)(A) of the 1934 Act, codified at 15 U:S.C. § 78q-l(b)(4)(A),
 
 [12]
 
 permits a clearing broker to deny participation to those subject to a “statutory disqualification,” which may occur, pursuant to 15 U.S.C. § 78e(a)(39)(B), when that entity has its registration revoked by the commission or the member falsifies an application for participation. Thus, the gravamen of plaintiffs’ argument is that this court should imply a private right of action for negligence against the clearing broker on the basis of an alleged failure to comply with section 78q-l(b)(4)(A), in that CSC and Paine Webber, having knowledge of previous malfeasance by Mercer, should have disqualified Mercer from receiving clearing services but did not.
 

 The Third Circuit, as defendants correctly note, has rejected the contention that either section 6 or section 7 of the 1934 Act contains an implied private right of action against an exchange for failure to enforce its own rules.
 
 See Walck v. American Stock Exchange, Inc.,
 
 687 F.2d 778, 780 (3d Cir.1982),
 
 cert. denied,
 
 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983);
 
 Ferreri v. Fox, Rothschild, O’Brien & Frankel,
 
 690 F.Supp. 400, 403 n. 3 (E.D.Pa.1988) (“There are no private rights of action under Sections 6 and 7 of the Exchange Act.”).
 
 [13]
 
 Whether section 17 of
 
 *331
 
 the Exchange Act supports an implied private right of action, presents an entirely separate question from the issue decided in
 
 Walck,
 
 and appears to be a novel question of law.
 
 [14]
 

 In
 
 Cort v. Ash,
 
 422 U.S. 66, 78, 95 S.Ct. 2080, 2087-88, 45 L.Ed.2d 26 (1975), the Supreme Court elucidated four factors for courts to examine in order to determine whether a federal statute or regulation supports a private right of action. This court must examine:
 

 (1) whether plaintiff is a member of the class ‘for whose especial benefit the statute was enacted’;
 

 (2) whether there is evidence of legislative intent to create or preclude the relief sought;
 

 (3) whether the relief sought is consistent with the legislative scheme; and
 

 (4) whether the relief sought is the type that is ‘traditionally relegated’ to states, such that federal relief would interfere with the state scheme.
 

 Mallenbaum v. Adelphia Communications Corp.,
 
 74 F.3d 465, 469 (3d Cir.1996) (quoting
 
 Cort,
 
 422 U.S. at 78).
 
 See also Reschini v. First Federal Savings & Loan Assoc. of Indiana,
 
 46 F.3d 246, 255 (3d Cir.1995). The weight given to each factor, however, is not equal and the Supreme Court has cautioned that our focus must fall upon “whether Congress intended to create, either expressly or by implication, a private cause of action.”
 
 Touche Ross & Co. v. Redington,
 
 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). Therefore, we turn first to an examination of Congressional intent.
 

 In amending section 17A in 1975, Congress found that- “[t]he prompt and accurate clearance and settlement of securities transactions, including the transfer of record ownership and the safeguarding of securities and funds related thereto, are necessary for the protection of investors and persons facilitating transactions by and acting on behalf of investors.” 15 U.S.C. § 78q-l(a)(l). Section 17A, however, does not contain any mention of a private remedy.
 
 See Brawer v. Options Clearing Corp.,
 
 633 F.Supp. 1254, 1261 (S.D.N.Y.),
 
 affd,
 
 807 F.2d 297 (2d Cir.1986),
 
 cert. denied,
 
 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987). The section does, however, require that clearing agencies register and report to the SEC and, more importantly for purposes of resolution of this issue, the Commission is empowered to adopt Rules and Regulations governing their conduct. 15 U.S.C. § 78q-l(d)(l). In requiring registration with the SEC, Congress stated: “The bill provides that inspection of clearing agencies and enforcement of the legislation and rules promulgated thereunder are the primary responsibility of the ‘appropriate regulatory agency.’” Securities Acts Amendments of 1975, S.Rep. No. 94-75, 94th Cong., 1st Sess (1975),
 
 reprinted in
 
 1975 U.S.C.C.A.N. 179, 235. The appropriate regulatory agency in this instance is the SEC. 15 U.S.C. § 78e(a)(34)(B)(iv). Congress, when drafting legislation, has the ability to insert a private right of action when it so desires.
 
 See Touche Ross & Co.,
 
 442 U.S. at 572, 99 S.Ct. at 2487 (“Obviously, then, when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly.”).
 

 Moreover, the congressional intent in amending section 17A was to enhance the
 
 *332
 
 safeguards of investors in the mechanical aspects of prompt and accurate transfer of record ownership and safeguarding the funds related thereto; plaintiffs’ Complaints nowhere allege that defendants have lost the securities or funds or failed to account for those securities or funds. No implied private right of action arises when the conduct of the defendant clearing agency lies beyond this heartland of the intent of section 17A.
 

 Thus, although it is clear that the statute was designed to safeguard investors, Congress placed regulatory authority over clearing agencies with the SEC and evinced no intent in section 17A to create a private right of action for individual investors in instances when a clearing agency fails to enforce its own rules. As such, because plaintiffs cannot satisfy the second, and most important,
 
 Cort
 
 factor, their argument that section 17A contains a private right of action must be rejected.
 
 [15]
 

 Conclusion
 

 Thus, on the basis of the foregoing, this court does hereby grant the motion to dismiss of defendants Correspondent Services Corporation and Paine Webber, Inc. Under the facts as they are alleged in the present case, federal and New Jersey securities law do not support liability on the basis of apparent agency against a clearing broker. In addition, plaintiffs’ for negligence must also be dismissed, as section 17 of the 1934 Act does not contain a implied private right of action and a clearing broker does not owe the customer of an introducing broker a “broad fiduciary duty.”
 

 [1]
 

 . The Riggs allege that they suffered losses total-ling $167,380.43 from Schappell’s trading. The Becks allege that they suffered losses totalling $163,413.00 from Schappell's trading.
 

 [2]
 

 . Defendants assert that federal securities law applies with equal force to plaintiffs' claims brought pursuant to
 
 N.J.S.A.
 
 § 49:3-71 (a)(2).
 
 See Northwestern Nat’l Ins. Co v. Alberts,
 
 769 F.Supp. 498, 509 (S.D.N.Y.1991) ("[fiederal securities law concepts are to be used to define liability under the New Jersey statute”) (citations omitted). As plaintiffs do not challenge this proposition, or present any arguments distinguishing New Jersey law from federal law, the result reached in this opinion will apply to plaintiffs claims brought pursuant to New Jersey law, as well as to those claims brought pursuant to federal law.
 

 [3]
 

 . In
 
 Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,
 
 511 U.S. 164, 114 5. Ct. 1439, 1446, 128 L.Ed.2d 119 (1994) the Supreme Court concluded that there is no private right of action against an aidor and abettor under section 10(b) of the 1934 Act.
 
 See also Kline,
 
 24 F.3d at 485 n. 4;
 
 Pahmer v. Greenberg,
 
 926 F.Supp. 287, 307 (E.D.N.Y.1996). Prior to that decision, however, courts had generally concluded that absent the existence of a fiduciary duty between the clearing broker and the introducing broker’s customers, "the simple providing of normal clearing services to a primary broker who is acting in violation of the law does not make out a case of aiding and abetting against the clearing broker.”
 
 Stander,
 
 730 F.Supp. at 1286.
 
 See also Connolly v. Havens,
 
 763 F.Supp. 6, 11 (S.D.N.Y.1991). In order to hold defendants liable for aiding and abetting a primary violation of the Act, plaintiffs would have had to demonstrate that defendants knew of the wrong and substantially assisted in its perpetration.
 
 See Azrielli v. Cohen Law Offices,
 
 21 F.3d 512, 517 (2d Cir.1994);
 
 Ross v. Bolton,
 
 904 F.2d 819, 824 (2d Cir.1990).
 

 [4]
 

 . Turning to generally accepted common law principles of agency, the Restatement (Second) of Agency § 27 (1958 & Supp.1992-93) provides that:
 

 Except for the execution of instruments under seal or for the conduct of transactions required by statute to be authorized in a particular way, apparent authority to do an act is created as to a third person by written or spoken words or another conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.
 

 Thus, it is the principal who creates apparent authority by either intending the third person to believe that the agent is empowered to act for him, or by creating circumstances whereby he "should realize that his conduct is likely to create such a belief.”
 
 Id.,
 
 comment a.
 
 See also Metco Products, Inc. v. N.L.R.B.,
 
 884 F.2d 156, 159 (4th Cir.1989) (citing Restatement (Second) of Agency § 27 (1958
 
 &
 
 Supp.1992-93) ("an agent is imbued with apparent authority to bind his or her principal if a third person could reasonably interpret acts or omissions of the principal as indicating that the agent has authority to act on behalf of the principal”));
 
 AT & T v. Winback and
 
 
 *326
 

 Conserve Program, Inc.,
 
 42 F.3d 1421, 1430 (3d Cir.1994),
 
 cert. denied,
 
 - U.S. -, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995).
 

 "Apparent authority” is defined as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons.” Restatement (Second) of Agency § 8 (1958). If apparent authority exists, “the third person has the same rights with reference to the principal as where the agent is authorized."
 
 Id.,
 
 comment a.
 

 [5]
 

 . We are constrained to note at the threshold that such an allegation turns the relationship between an introducing broker (Mercer) and the clearing brokers (CSC and Paine Webber) on its head. There is little logic in the proposition that the introducing broker is a mere agent for the clearing brokers who perform backroom paperwork.
 

 [6]
 

 . In
 
 First Interstate Bank,
 
 511 U.S. at-, 114 S.Ct. at 1448, the majority opinion, in relatively expansive language, concluded that section 10(b) "prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act [and this] proscription does not include giving aid to a person who commits a manipulative or deceptive.” On the basis of this language, the dissenting Opinion questioned whether doctrines of vicarious liability such as respondeat superior and other forms of common law agency would survive this construction of section 10(b).
 
 Id.
 
 at-, 114 S.Ct. at 1460 n. 12 (Stevens, J., dissenting).
 
 See also AT & T,
 
 42 F.3d at 1430. The Court has in the past, however, recognized, in dicta, that the lower courts have imposed liability upon principals for the conduct of their agents in the context of federal securities laws.
 
 See American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.,
 
 456 U.S. 556, 568, 102 S.Ct. 1935, 1943, 72 L.Ed.2d 330 (1982) (citing
 
 Holloway v. Howerdd,
 
 536 F.2d 690 (6th Cir.1976) and
 
 Kerbs v. Fall River Industries, Inc.,
 
 502 F.2d 731 (10th Cir.1974)).
 
 See also Pollack v. Laidlaw Holdings, Inc.,
 
 No. 90-5788, 1995 WL 261518, at *17 (S.D.N.Y. May 3, 1995) (noting that although
 
 First Interstate Bank
 
 has called into question "all common law claims that are adjunct to a direct securities claim,” unlike aiding and abetting liability, the "liability of a principal based upon apparent authority has long been recognized by federal courts”).
 

 [7]
 

 .
 
 Section
 
 20(a) provides:
 

 Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.
 

 15 U.S.C. § 78t(a).
 

 [8]
 

 . The court also noted that it was adopting the majority opinion on the issue, concurring with decisions of the Second, Fourth, Fifth, Sixth, Seventh, and Tenth Circuits.
 
 Id.
 
 at 30 (collecting cases).
 

 [9]
 

 . In
 
 Rochez I,
 
 491 F.2d 402, 413 (3d Cir.1974), the Court of Appeals vacated the district court’s original order dismissing the corporate defendant on grounds that the trial judge failed make appropriate findings of fact.
 

 [10]
 

 . In
 
 Sharp,
 
 649 F.2d at 181 n. 5, the Third Circuit rejected the position of the SEC, as amicus curiae, which sought to have the panel overrule the earlier decision in
 
 Rochez II
 
 and impute the full range of agency principles into the securities laws.
 

 [11]
 

 . In support of this position, plaintiffs direct this court to the decision of the Eastern District of Tennessee in
 
 Jones v. First Equity Corp. of Florida,
 
 607 F.Supp. 350 (E.D.Tenn.1985) which denied Paine Webber summary judgment on grounds that material issues of fact remained with regard to whether the introducing broker was acting under the apparent authority of Paine Webber, the clearing broker. This decision is inapposite, however, as the Sixth Circuit Court of Appeals, under which the Eastern District of Tennessee sits, maintains an expansive reading of agency principles under federal securities laws,
 
 see supra
 
 note 8 and text, which the Third Circuit does not.
 

 [12]
 

 . 15 U.S.C. § 78q-l(b)(4)(A) provides, in pertinent part:
 

 A registered clearing agency may, and in cases in which Commission, by order, directs as appropriate in the public interest shall, deny participation to any person subject to a statutory disqualification.
 

 [13]
 

 . This conclusion is contrary to that of the position taken by the Second Circuit on this issue in
 
 Baird v. Franklin,
 
 141 F.2d 238 (2d Cir.),
 
 cert. denied,
 
 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944), which implied a private right of action under section 6. The Second Circuit, however, has since restricted the availability of a private right of action under section 6 to instances where bad faith is alleged, and not merely negligence.
 
 See Brawer v. Options Clearing Corp.,
 
 807
 
 *331
 
 F.2d 297, 302 (2d Cir.1986),
 
 cert. denied,
 
 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987).
 

 [14]
 

 . Plaintiffs have cited no applicable case law to support this position, instead directing this court to
 
 Baird
 
 and its progeny, discussed
 
 supra
 
 note 13, as well as the decision of the Third Circuit-in
 
 Angelastro v. Prudential-Bache Securities,
 
 764 F.2d 939, 949-50 (3d Cir.1985),
 
 cert. denied,
 
 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1986), which implied a private right of action under Rule 10b-16. Plaintiffs cite to
 
 Angelastro
 
 for the proposition that "the Third Circuit recognizes the existence of a private right of action for the violation of a Securities and Exchange Act rule.” This revelation, however, is not helpful to resolution of the instant issue arising under section 17A, as the Supreme Court has long recognized a private right of action under Rule 10b-5.
 
 See Blue Chip Stamps v. Manor Drug Stores,
 
 421 U.S. 723, 730, 95 S.Ct. 1917, 1922-23, 44 L.Ed.2d 539 (1975). Defendants similarly fail to address this issue in their brief, as they rely exclusively on
 
 Walck
 
 and the conclusion that sections six and seven of the Exchange Act do not provide a private right of action. The issue currently before this court is whether section 17A provides a private right of action for these plaintiffs.
 

 [15]
 

 . Lastly, plaintiffs argue that a duty may be imposed upon the clearing broker on the basis of a violation of industry custom or practice. However, as plaintiffs have directed this court to no industry custom or practice defendants CSC and Paine Webber are alleged to have violated, this argument must be rejected. Further, the case plaintiffs cite for this proposition,
 
 Bums v. Rich-field Securities, Inc.,
 
 809 F.Supp. 860 (D.Utah 1992), is inapposite, as it pertains to alleged violations of Section 59 of the National Association of Securities Dealers ("NASD”) Uniform Practice Code and the amendments thereto, which govern close-out procedures — procedures not at issue in this case.