

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| L.M. Quality Motors, Inc.<br><br>Recurridos<br><br>v.<br><br>Motorambar, Inc.<br><br>Peticionarios | Certiorari<br><br>2011 TSPR 158<br><br>183 DPR _____ |

Número del Caso:  CC         - 2011 - 856


Fecha: 28 de octubre de 2011


Tribunal de Apelaciones:

     Región Judicial de San Juan


Jueza Ponente:          Hon. Migdalia Fraticelli Torres


Abogados de la Parte Peticionaria:

     Lcdo. Jorge L. Peirats
     Lcda. Maritere Colón Domínguez


Abogados de la Parte Recurrida:

     Lcdo. Eduardo H. Martínez Echevarría
     Lcdo. Miguel A. Eliza Rivera


     Materia:     Injuction Preliminar y Permanente; Incumplimiento de Contrato; Ley 75; Daños


     Este documento constituye un documento oficial del Tribunal Suprem o que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

L.M. Quality Motors, Inc.

   Recurridos

          vs.               CC-2011-856       Certiorari

Motorambar, Inc.

   Peticionarios

## RESOLUCIÓN

San Juan, Puerto Rico, a 28 de octubre de 2011.

Se le concede a la parte recurrida un término de quince (15) días, contados a partir de la notificación de esta Resolución, para que comparezca y muestre causa, si alguna tuviere, por la cual no se deba revocar la Resolución dictada por el Tribunal de Apelaciones en el caso núm. KLCE201101319, L.M. Quality Motors, Inc. v. Motorambar, Inc.

Hasta tanto este Tribunal resuelva lo que proceda en derecho, se ordena la paralización de los procedimientos en el Tribunal de Primera Instancia.

Notifíquese por teléfono, telefax y por la vía ordinaria.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera García emitió un Voto Particular Disidente al cual se unen la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Feliberti Cintrón y Estrella Martínez.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

L.M. Quality Motors, Inc.
        Recurrido

        v.                        CC-2010-0856

    Motorambar, Inc.
        Peticionario

Voto particular disidente emitido por el Juez Asociado Señor Rivera García, al cual se une la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Feliberti Cintrón y el Juez Asociado señor Estrella Martínez.

En San Juan, Puerto Rico, a 28 de octubre de 2011.

El curso decisorio de la mayoría del Tribunal de paralizar las vistas de *injunction* preliminar y permanente, y emitir una orden de mostrar causa, con clara inclinación a revocar, me obliga a disentir muy respetuosamente. Somos del criterio que en el caso de autos, Motorambar no sufriría daño alguno de no expedirse la solicitud de auxilio de jurisdicción. Asimismo, consideramos improcedente la expedición de una orden de mostrar causa ya que ninguna de las partes contratantes, Quality y Motorambar, llegaron a un acuerdo de voluntades necesario para consentir a la cláusula de arbitraje redactada en este acuerdo.

I

El 24 de octubre de 2011, Motorambar, Inc. (Motorambar) presentó ante este Tribunal un recurso de *certiorari* acompañado de una moción en solicitud de auxilio de jurisdicción. Nos solicitó que ordenaramos la paralización de las vistas pautadas para el 24 y 31 de octubre del 2011 y el 2 de noviembre de 2011 en el Tribunal de Primera Instancia, relacionadas con la demanda de *injunction* preliminar y permanente, presentada en su contra por L.M. Quality Motors, Inc. (Quality). Así también, solicitó la revocación de la resolución emitida por el Tribunal de Apelaciones de 21 de octubre de 2011. En ese dictamen, el foro apelativo determinó invalidar una cláusula sobre arbitraje para la solución de disputas establecida en el contrato celebrado entre las partes.

Según los hechos de este caso, Quality, quien es concesionaria de los vehículos Nissan en el municipio de Manatí y otras áreas limítrofes, presentó ante el tribunal de primera instancia una solicitud de entredicho provisional, *injuction* preliminar y de *injuction* permanente contra Motorambar. Esta última, es la distribuidora general de los vehículos Nissan en todo Puerto Rico. Esa corporación, a su vez, distribuye y vende esos vehículos a sus concesionarios en la Isla, entre los cuales se encuentra Quality. En esencia, Quality alegó que el 16 de agosto de 2011 Motorambar, sin justa causa, había dejado sin efecto el contrato de

distribución en violación de la Ley Núm. 75. Al amparo de la sección 278 b-1 de la Ley Núm. 75, Quality solicita que se le ordene a Motorambar desistir de llevar a cabo cualquier acción en menoscabo de la relación contractual existente entre ellos.[1] El Tribunal de Primera Instancia declaró "no ha lugar" el entredicho preliminar, no obstante pautó una vista en una fecha posterior para dilucidar la procedencia del *injuction* preliminar y el *injuction* permanente.

Posteriormente, Motorambar instó una moción de desestimación. Adujo que el 20 de febrero de 2007 el Sr. Luis Morales (en representación de Quality) y el señor José Ordeix Llabaly (en representación de Motorambar) suscribieron un contrato titulado *Contrato de Concesionarios de Ventas No Exclusivo*. Añadió que en ese contrato, específicamente en su Cláusula 36-1, se estableció que las disputas surgidas entre las partes serían resueltas mediante un procedimiento de arbitraje, por lo cual el tribunal de primera instancia carecía de jurisdicción. El foro primario mediante resolución de 16 de septiembre del 2011, declaró "sin lugar" esta moción de desestimación. Razonó también, que existía una controversia en relación a la vigencia del contrato y la validez de la cláusula de arbitraje pactada. En

---

[1] La sección 278 b-1 de la Ley Núm. 75 establece que cualquier litigio en que esté envuelto el menoscabo a los derechos de un distribuidor, el tribunal podrá conceder cualquier remedio provisional o de naturaleza interdictal durante la pendencia del pleito para que se haga o se deje de hacer o para que se ordene a cualquier parte, o a ambas, continuar la relación tal y como existía esta antes del mencionado menoscabo.

consecuencia, para dilucidar tales controversias citó a las partes a una vista evidenciaría a ser celebrada posteriormente.

Luego de celebrada la vista evidenciaría, en la cual se desfiló prueba testifical y documental, el 28 de septiembre de 2011 el tribunal de primera instancia emitió una resolución en la que declaró "no ha lugar" la moción de desestimación presentada por Motorambar. El foro primario le concedió credibilidad a los testimonios del señor Rocafort, quien funge como Gerente General de Motorambar y trabaja directamente con los contratos de la corporación y sus concesionarios, así como al señor Ordeix, representante de Motorambar. Estos testificaron desconocer las particularidades, así como las consecuencias de la cláusula de arbitraje. Asimismo, admitieron que tampoco orientaron al señor Morales en relación con dicha cláusula. A base de la prueba vertida en la vista, el foro primario determinó que ambas partes, al suscribir el contrato, no tenían conocimiento alguno del contenido y alcance de la cláusula. Es decir, no conocían su significado ni las consecuencias reales. Por consiguiente, el pacto de la misma no respondía a la voluntad de ninguno de los contratantes, ya que ambas partes, tanto Quality como Motorambar, ignoraban totalmente lo que acarreaba la referida cláusula. Ante tal desconocimiento, se determinó que esa cláusula no era parte del contrato. Por ello, puntualizó que la Cláusula

36-1, al carecer del elemento de consentimiento de las partes, era inválida.

Con relación al argumento de Motorambar referente a la inconstitucionalidad del Artículo 3C de la Ley Núm. 75, el foro primario resolvió que según con la doctrina de autolimitación judicial, no era necesario entrar a dilucidar dicho planteamiento. Particularmente, al margen del Artículo 3C de la Ley Núm. 75, el tribunal dispuso que no existió voluntad alguna de las partes para pactar esa cláusula de arbitraje, debido a la falta de información necesaria para un consentimiento válido.

Inconforme con ese dictamen, el 14 de octubre de 2011, Motorambar presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. En esencia, reiteró sus argumentos presentados ante el foro primario. Arguyó que la cláusula de arbitraje era válida, empero, de considerarse lo contrario, procedía entonces que se declarara inconstitucional el Artículo 3C de la Ley Núm. 75.

El 21 de octubre de 2011, el Tribunal de Apelaciones emitió una resolución en la que denegó la expedición del auto de *certiorari*, así como la moción en auxilio de jurisdicción. En la evaluación de esta controversia, el foro apelativo intermedio examinó la transcripción de la prueba oral y determinó que la apreciación de la prueba realizada por el foro primario estaba apoyada en la prueba vertida, ya que surgía de los testimonios de los señores

Rocafort, Ordiex y Morales, que estos desconocían lo que conlleva una cláusula de arbitraje. Por lo tanto, no encontró que el foro primario actuara mediante pasión, prejuicio, parcialidad o error manifiesto en su decisión.

En relación a la constitucionalidad de la ley, el Tribunal de Apelaciones determinó a tenor con nuestros pronunciamientos jurisprudenciales relacionados a la doctrina de autolimitación judicial, que en su función judicial debían abstenerse de dirimir la constitucionalidad del Artículo 3C de la Ley Núm. 75, ya que no era necesario debido a que hay otro fundamento que puede disponer del caso. El Artículo 3C de la Ley Núm. 75 no está en controversia, por lo cual no es necesario dilucidar su inconstitucionalidad. La cláusula de arbitraje que es objeto de la controversia se declaró inválida porque ambas partes estaban ausentes de la información necesaria para emitir un consentimiento válido. Por último, el foro apelativo estableció que el recurso presentado no cumple con lo dispuesto por la Regla 40 del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B. R. 40.

Insatisfecho, el 24 de octubre de 2011, Motorambar presentó ante nos un recurso de *certiorari* junto con una moción en auxilio de jurisdicción.[2] En su recurso

---

[2] El recurso de *certiorari* presentado ante este Tribunal contiene un total de 26 páginas. El 24 de octubre de 2011, Motorambar presentó una moción para que se admitiera su recurso en exceso de las páginas permitidas por la Regla 17(9) del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXII-B. Consideramos innecesario en este caso el exceso de páginas.

reprodujo los mismos errores planteados ante el foro apelativo intermedio.

II

### A. El Auxilio de Jurisdicción

El inciso (a) de la Regla 28 del Reglamento de este Tribunal 4 L.P.R.A. AP. XXI-A, dispone: "El Tribunal podrá expedir una orden provisional en auxilio de jurisdicción cuando fuere necesario hacer efectiva su jurisdicción en un asunto pendiente ante su consideración. A los fines de esta Regla, se entenderá que el Tribunal atenderá, sin sujeción al trámite ordinario, cualquier asunto relacionado con el recurso presentado o pendiente, con el propósito de evitar alguna consecuencia adversa que afecte su jurisdicción o que pueda causar daño sustancial a una parte mientras resuelve el recurso".

Mientras el inciso (c) de esta regla señala como sigue: "Cuando una parte solicite una orden en auxilio de jurisdicción con la intención de paralizar la celebración de una vista, la misma deberá ser presentada **no más tarde de cinco (5) días antes de la fecha pautada** para la vista cuya celebración se pretende paralizar, excepto que se demuestre causa justificada."

La decisión de paralizar el efecto de una decisión mediante una solicitud de auxilio de jurisdicción decretando o denegando la paralización de los procedimientos, recae en la sana discreción del tribunal que debe guiarse por los siguientes criterios: (a) que el

peticionario presente un caso fuerte de probabilidad de prevalecer en los méritos de la apelación; (b) que demuestre que a menos que se detenga la ejecución, sufrirá un daño irreparable; (c) que ningún daño sustancial se causara a las demás partes interesadas; y (d) que la suspensión de la sentencia no perjudica el interés público. Peña v. Federación de Esgrima de P. R., 108 D.P.R. 147, 154-155 (1978).

Motorambar presentó el petitorio en auxilio de jurisdicción con intención de paralizar la celebración de la vista sobre *injunction* preliminar y permanente, pautada para el mismo día en que se presentó la moción, es decir el 24 de octubre de 2011 y la cual continuaría el 31 de ese mes, así como, el 2 de noviembre de este año. El inciso (c) de la Regla 28 de este Tribunal, 4 L.P.R.A. Ap. XXI-A, establece que el peticionario de la moción en auxilio de jurisdicción deberá al menos presentarla cinco (5) días antes de la celebración de la vista. Motorambar incumplió sin justificación con esta Regla.

Una moción en auxilio de jurisdicción se expedirá en situaciones de urgencia donde existe el peligro de un **daño sustancial**, según lo establece el inciso (a) de la Regla 28 de este Tribunal, *supra*. El caso de autos no cumple con los elementos para que expidamos el auxilio. La moción en auxilio de jurisdicción en el presente caso deja de cumplir con los criterios y requisitos que hemos reiterado. Colegimos que el recurso, carece de méritos,

ya que no existe ni la más remota posibilidad de causar "daños irreparables". En la solicitud de auxilio de jurisdicción no se establece el daño que recibiría Motorambar con la dilucidación del *injunction* ante el tribunal de instancia. Advertimos, que en caso de prevalecer la postura de Motorambar, el contrato entre las partes proveé para que este recupere de Quality todos los gastos y honorarios de abogados incurridos con relación a la determinación final y la transferencia o cambio de jurisdicción al foro arbitral. Véase, Cláusula 36.3 del contrato, Ap. pág. 260. Por consiguiente, no existe correlación entre el daño alegado y las vistas de *injunction* a celebrarse en el tribunal.

Sin embargo, el paralizar los procedimientos interdictales ante el tribunal de primera instancia sí afectaría irremediablemente al distribuidor exclusivo, Quality, en claro detrimento de la política pública pautada a través de la Ley Núm. 75. Asimismo, opinamos que aún de concluirse que erraron los foros inferiores al no validar la cláusula de arbitraje, ello no impide que el foro primario emita el remedio interdictal solicitado por Quality. Nótese que la Ley Núm. 75 permite la concesión del remedio provisional "en cualquier pleito en que éste envuelva directa o indirectamente la terminación de un contrato de distribución o cualquier acto en menoscabo de la relación establecida entre el principal o concedente".

Véase, Art. 3-A de la Ley Núm. 75, 10 L.P.R.A. sec. 278b-1.

### B. La improcedencia del recurso de *Certiorari*

A tenor con la jurisprudencia federal, hemos expresado que los tribunales tenemos la tarea de dirimir si un acuerdo establece un deber de las partes de arbitrar una controversia. World Films, Inc. v Paramount Pict. Corp., 125 D.P.R. 352, 361 (1990), citando a At&t Technologies v. Communications Workers, 475 U.S. 643 (1986). Igualmente, en Rivera v. Clark Melvin Securities Corp., 59 F. Supp. 2d 297, 305 (1999), el tribunal dispuso que corresponde a los tribunales decidir si existe o no un acuerdo válido para arbitrar.

Por otro lado, es harto conocido que de ordinario, los contratos se perfeccionan mediante la concurrencia de los elementos de la causa, el objeto y el consentimiento, 31 L.P.R.A. sec. 3391. En relación con el consentimiento, el profesor José Vélez Torres, comentó que "[l]a prestación del consentimiento para que sea considerada válida, presume una voluntad capaz que sea, además, libre y **que tenga completo conocimiento sobre lo que se está haciendo, es decir una voluntad que actúa libre y espontáneamente."** (Énfasis nuestro.) Vélez Torres, Curso de Derecho Civil; derecho de contratos, San Juan, Univ. Interamericana Facultad de Derecho, 1997, pág. 45. Asimismo, citando con aprobación a Federico De Castro y Bravo y a Puig Brutau, dispusimos que "para que se entienda prestado el

consentimiento a un negocio jurídico, ya expresa o implícitamente, **es necesario que el declarante tenga conocimiento adecuado del alcance de su declaración"** (Énfasis nuestro.) Colón Gutiérrez v. Registrador, 114 D.P.R. 850, 863 (1983) citando a Federico De Castro y Bravo, El Negocio Jurídico, Madrid, Gráficas Marisal, 1971, pág. 58; J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1978, T. II, Vol. I, pág. 77. En este caso, las partes desconocían el alcance de sus declaraciones en torno a la Cláusula 36-1 de arbitraje establecida en el contrato que suscribieron. Los testimonios desfilados en la vista, a los cuales el foro primario le confirió credibilidad, así lo demostraron. Por ende, las partes consintieron el contrato, salvo la Cláusula 36-1, porque no estaban informados adecuadamente de lo que implicaba aceptarla.

Es también doctrina reiterada por este Tribunal, que salvo se demuestre que medió pasión, prejuicio, parcialidad o error manifiesto del foro primario, los tribunales apelativos no debemos intervenir con la apreciación de la prueba del Tribunal de Primera Instancia. Rodríguez v. Urban Brands, 167 D.P.R. 509, 522 (2006). Esto es así, ya que los juzgadores del foro primario se encuentran en mejor posición de aquilatar la prueba testifical y adjudicar credibilidad, toda vez que escucharon a los testigos y observaron su comportamiento mientras declaraban. Argüello v. Argüello, 155 D.P.R. 62,

79 (2001).    Como indicáramos anteriormente, el foro primario, a base de la prueba presentada y los testimonios de los señores Rocafort, Ordiex y Morales, determinó que **ambas** partes no tenían la voluntad para consentir la cláusula de arbitraje.   Conforme a la decisión emitida por el foro apelativo intermedio, consideramos que la determinación del foro de instancia está libre de pasión, prejuicio, parcialidad o error manifiesto. En atención a ello, debemos otorgar en este caso deferencia al juez sentenciador en su apreciación de la prueba.

Por otra parte, es doctrina reiterada la regla de autolimitación judicial.   Esta exige a los tribunales abstenerse de resolver una controversia por medio de un fundamento constitucional si le es posible solucionarla mediante algún otro fundamento de índole no constitucional.   En armonía con lo anterior, el foro primario luego de aquilatar la prueba desfilada durante la vista, no consideró necesario pasar juicio sobre la constitucionalidad del Artículo 3C de la Ley Núm. 75.   La prudencia judicial de ese foro se basó en la prueba presentada durante la vista de la cual surgía diáfanamente que las partes no tenían voluntad de establecer una cláusula de arbitraje en el contrato.   Quedó probado que tanto Quality como Motorambar desconocían el significado y las consecuencias de la cláusula.   Es evidente que ninguna de las partes explicó la cláusula de arbitraje durante la contratación.

Asimismo, si consideramos la presunción establecida en el Artículo 3C de la Ley Núm. 75, llegaríamos al mismo resultado. Nótese que la ley federal de arbitraje no ocupa el campo cuando las partes han establecido que la ley de un estado regirá el acuerdo de arbitraje. World Films, Inc., *supra*, pág. 358, citando a Volt Information Sciences, Inc. v. Board of Trustee of Leland Stannford Junior Univ., 485 U.S. 976 (1988). El contrato en su Cláusula 36-2, estableció que las decisiones del árbitro serán conforme al contrato o las leyes de Puerto Rico, en las áreas en que pueda existir algún vacío en el contrato. Evidentemente, las partes deseaban que en caso de surgir algún conflicto en torno al contrato fuera resuelto conforme a lo dispuesto en nuestro ordenamiento jurídico.

La Ley 448 de 28 de diciembre de 2000 (10 L.P.R.A sec. 278b-3), que enmendó la Ley Núm. 75, *supra*, para incorporarle a esta última el Artículo 3C, reitera la política de proteger a los distribuidores en su relación comercial con los principales. Establece lo siguiente:

> Antes de que pueda invocarse o ponerse en vigor cualquier convenio de cláusula que obligue a las partes a resolver mediante arbitraje cualquier controversia surgida bajo un contrato de distribución otorgado al amparo del presente capítulo, será requisito indispensable antes de que dicha controversia pueda ser sometida a arbitraje, a solicitud de cualquiera de las partes, que un tribunal con jurisdicción en Puerto Rico determine que dicha cláusula o convenio de arbitraje **fue suscrito en forma libre y voluntaria** por ambas partes.
>
> Existirá una presunción controvertible de que cualquier convenio o cláusula de arbitraje

contenida en un contrato de distribución fue
incluida o suscrita a instancia del principal o
concedente, y de que cualquier convenio o
cláusula que obligue a las partes resolver
mediante arbitraje cualquier controversia
surgida bajo dicho contrato es un contrato de
adhesión, a ser interpretado y puesto en vigor
como tal. (Énfasis nuestro.)

Con la aprobación de esta Ley, se persigue evitar aquellas situaciones que han debilitado o disminuido la protección ofrecida por la Ley Núm. 75. Es por ello que el legislador expresó, "es altamente recomendable asegurar que la decisión de suscribir un acuerdo de arbitraje como parte de un contrato de distribución, que implica una renuncia al derecho a acudir al foro judicial, reciba por lo menos una protección específica de ley, al disponer que antes de poner en vigor cualquier convenio o cláusula de arbitraje sea requisito indispensable, a solicitud de cualquiera de las partes, que un Tribunal con jurisdicción en Puerto Rico determine que dicha cláusula o convenio de arbitraje fue suscrito en forma libre y voluntaria por ambas partes". Exposición de Motivos de Ley Núm. 448-2000, *supra.*

Por otro lado, el Tribunal Supremo federal, en <u>Prima Paint Corp. v. Flood Conklin Mfg. Co.</u>, 388 U.S. 395 (1967), interpretó las secciones 2, 3 y 4 de la Ley Federal de Arbitraje. Resolvió que las cláusulas de arbitraje son separables del resto del contrato que se incorporan, correspondiendo al tribunal, no a un árbitro adjudicar un ataque a las mismas. Distinto es cuando se

impugna la totalidad del contrato, en cuyo caso le corresponde a un árbitro dirimir esa controversia cuando se ha pactado el arbitraje para resolver las que se susciten. Large v. Conseco, Fin. Ser. Corp., 292 F.3d 49 (2002).

La controversia en el caso de autos versa sobre la validez de la cláusula de arbitraje incluida en el contrato entre las partes. El Artículo 3C de la Ley Núm. 75 exige que los tribunales adjudiquen si la cláusula de arbitraje se acordó de manera libre y voluntaria. Según la prueba testimonial, Quality y Motorambar aunque discutieron otras cláusulas del contrato, no fue así con la cláusula de arbitraje porque desconocían su significado, alcance y no concurrió el acuerdo de voluntades necesario para consentimiento válido. Por lo tanto, la prueba que mereció la credibilidad del foro de primera instancia sostiene que ambas partes aceptaron el contrato, excepto lo dispuesto en la cláusula de arbitraje.

### III

Por los fundamentos expuestos, denegaría la expedición del auto de *certiorari,* así como la solicitud de auxilio de jurisdicción.

Edgardo Rivera García
Juez Asociado